**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| FREDRIC A. GUENTHER, *et al.*, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:16-CV-00995 |
| | § | |
| BP RETIREMENT ACCUMULATION | § | |
| PLAN, *et al.*, | § | |
| *Defendants*. | § | |

## ORDER

The Court has before it the Plaintiffs' First Amended Complaint (Doc. No. 47), the Motion

to Dismiss that Complaint (Doc. No. 52) filed by Defendants BP Retirement Accumulation Plan

and BP Corporation North America, Inc. (hereinafter "Defendants"), Plaintiffs' Response in

Opposition to the Motion to Dismiss (Doc. No. 55), Plaintiffs' Sur-Reply (Doc. No. 70), and

Defendants' Reply Memorandum (Doc. No. 73).

**I.    Factual Allegations**

This is a case brought under the Employee Retirement Income Security Act of 1974

("ERISA"). The facts in this matter are set out in this Court's earlier opinion (Doc. No. 43)

concerning the Motion to Dismiss the original Complaint (Doc. No. 15) and need not be repeated

in detail here. Suffice it to say that Plaintiffs are former employees of Standard Oil of Ohio

("SOHIO") who became employees of BP Corporation North America, Inc. ("BP") when it

acquired SOHIO in 1987.

According to the First Amended Complaint, at the time of the acquisition, SOHIO had a

defined benefits plan governed by ERISA. In 1988 the SOHIO plan was merged into a new plan

called the BP America Retirement Accumulation Plan ("ARP"), which retained the same SOHIO

benefits formula. The following year BP converted the ARP to a cash balance plan called the BP

America Retirement Accumulation Plan ("RAP").[1] It is this 1989 conversion that is the genesis of Plaintiffs' contentions.

In their Sur-Reply, Plaintiffs describe their own case as follows:

INTRODUCTION

Defendants again claim in their reply introduction that Plaintiffs' [*sic*] brought this case because they were upset they did not receive the same pension benefits as other employee groups, such as Amoco and ARCO. This is not true. **Plaintiffs brought this action because Defendants did not provide the pension benefits they promised.**

(Doc. No. 70 at p. 5) (emphasis added).

Plaintiffs' opposition to the Motion to Dismiss attacks Defendants' "attempts to recharacterize" or "mischaracterize" their claims. While these allegations may or may not be true, the need for such characterization was caused by Plaintiffs' failure to adequately allege their own claims in an organized fashion that actually articulates a cause of action that could result in the relief for which they pray, should they prevail.

---

[1] As explained by the Second Circuit:

> A cash balance plan is a . . . plan intended to combine attributes of both defined contribution and defined benefit plans. In *Esden* [*v. Bank of Boston*], we also described the typical cash balance plan:
>
> > Under a cash balance pension plan, a hypothetical account is established in each participant's name. Benefits are credited to that "account" over time, driven by two variables: (1) the employer's hypothetical "contributions," and (2) hypothetical earnings expressed as interest credits. Employer "contributions" are usually expressed as a percentage of salary, the rate of which may vary with employee tenure. Interest credits may be at a fixed interest rate, but more often they are tied to an extrinsic index—for example, U.S. Government securities of a specified maturity—and they vary accordingly. Each year an employee receives a statement of her "account" balance, and can therefore see the value of her pension benefit. These features are designed to mimic the simplicity of a defined contribution plan.
>
> 229 F.3d 154, 158 (2d Cir. 2000). Thus, cash balance plans are often described as "hybrid": they create a benefit structure that simulates that of defined contribution plans, but employers do not deposit funds in actual individual accounts, and employers, not employees, bear the market risks. *See, e.g.*, *West v. AK Steel Corp.*, 484 F.3d 395, 399 (6th Cir. 2007). Because the individual accounts and contributions thereto are merely for recordkeeping purposes (and do not actually exist), cash balance plans constitute defined benefit plans under ERISA. *See Esden*, 229 F.3d at 158 n.6.

*Hirt v. Equitable Ret. Plan for Emps., Managers, & Agents.* 533 F.3d 102, 105 (2d Cir. 2008) (quoting *Esden*, 229 F.3d at 158).

In their opposition to the Motion to Dismiss, Plaintiffs cite breach of fiduciary duty and intentional misrepresentation cases. (Doc. No. 70 at pp. 15–16). The Court finds these references to be obscure, at the very least, since there are no causes of action in the First Amended Complaint characterized as either a claim of fraud, misrepresentation, or breach of promise or fiduciary duty.

Despite how they now describe their claims, the Plaintiffs in their First Amended Complaint grouped their claims under the following four "causes of action," which they refer to as "Counts":

(1) BP INTENTIONALLY DID NOT PROVIDE NOTICE OF REDUCTIONS IN THE RATE OF FUTURE BENEFIT ACCRUALS UNDER ERISA § 204(h) AND § 102(a);

(2) BP INTENTIONALLY DID NOT PROVIDE A SUMMARY PLAN DESCRIPTION;

(3) THE PLAN SHOULD BE REFORMED OR BP SHOULD PAY A SURCHARGE TO REMEDY BP's FIDUCIARY BREACH UNDER ERISA § 502(a)(3); and

(4) THE COURT SHOULD DETERMINE THAT THE RAP AND BP MUST PRODUCE THE RECORDS REQUESTED INCLUDING RECORDS MADE AVAILABLE TO THE OMBUDSMAN.

(Doc. No. 47 at pp. 38, 44, 46, & 52).

Not one of these headings suggest fraud, misrepresentation, or a breach of promise or fiduciary duty. For example, while Count Three seems to assume a breach of fiduciary duty has occurred, the headings do not actually enumerate a claim for such a breach. Neither courts nor parties are required to somehow divine what is meant; they are entitled to rely on what is stated and what is stated here is the failure to provide three categories of documents and a claim for a remedy for a cause of action which, according to Plaintiffs' own characterization, has not been pleaded.

As is evident, this Court, while understanding the gist of Plaintiffs' complaint, has been troubled by the manner in which it has been pleaded. For example, Counts One, Two, and Four, while perhaps containing correct statements of fact, do not state any cause of action under which this Court could award the ultimate relief they seek. Plaintiffs expand upon their complaints under these headings—but many of these allegations merely "repeat and reallege" other paragraphs in an attempt to include them by incorporation, which no doubt left the Defendants in a quandary as to how to fashion their response. The Court is also left in a quandary as to how to address each Count in an organized fashion. Count Three is, at best, a request for a remedy usually found in a plaintiff's prayer—not alleged as a cause of action. Finally, Count Four is a request for production, pleaded as a cause of action.

In an apparent attempt to move for dismissal in an orderly fashion, Defendants divide their Motion to Dismiss into seven subsections: (1) lack of standing (and failure to state a specific claim as to each plaintiff); (2) timeliness (or lack thereof); (3) failure to plead a § 204(h) cause of action; (4) failure to plausibly allege that Defendants did not provide a SPD; (5) failure to allege a breach of fiduciary duty claim; (6) failure to name the correct defendants; and (7) failure to plead a viable "cutback claim" (and Plaintiffs' concession to that effect).

## II.    Federal Rules of Civil Procedure—Motions to Dismiss

A defendant may file a motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.* The court may also consider documents that a defendant attaches to a motion to dismiss, if the documents are "referred to in the plaintiff's complaint and are central to [the] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 500 (5th Cir. 2000); *see also Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 926 (N.D. Tex. 2014).

## III. Discussion

This Court finds that, as pleaded, Plaintiffs' contentions can be segregated into two categories: (i) the failure to issue or produce documents or information (Count One: Notice of Reductions; Count Two: Summary Plan Description; and Count Four: Records Requested and Documents Made Available to the Ombudsman) and (ii) a plea for plan reformation or for Defendants to pay a surcharge to remedy a breach of fiduciary duty (Count Three: Reformation or Payment of Surcharge).

## A. Count One and Count Two

Both Count One and Count Two involve violations of ERISA's mandatory disclosure scheme and as such originate under § 502(a)(3). All such claims are subject to 29 U.S.C. § 1113—the six-year statute of repose contained in ERISA. Under the statute of repose, such claims must be made within six years of the breach or else, absent fraud or concealment, are barred. Plaintiffs plead such acts or omissions were intentional, but they do not plead they were concealed or done fraudulently, which are the only exceptions found in § 1113. Consequently, even if one gives the Plaintiffs the most generous calendar, these claims accrued in the 1988–90 time period. Thus, they were barred over twenty years ago. Plaintiffs' response to the Motion to Dismiss does not suggest any reason or authority explaining why the claims referred to in Count One (notices or lack thereof) and Count Two (SPD or lack thereof) should not be time-barred. It cannot be contested that each Plaintiff knew decades ago that they did not receive these notices/documents.

The requirement to provide notice of a reduction of benefits is found in 29 U.S.C. § 1054 in Subchapter I, "Protection of Employee Benefit Rights." The requirement of a SPD is found in §§ 1021–1022, also found in Subchapter I. Section 1113, which applies to all claims under Subchapter I, clearly states:

> No action may be commenced under this subchapter with respect to . . . any responsibility, duty, or obligation . . . after the earlier of—
>
> > (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation . . . .

6

This latest date was decades ago. According to Plaintiffs' own allegations, they should have been told about the reduction in benefits (Count One) before the plan was implemented.[2] They also knew they did not receive the SPD (Count Two) decades ago. Plaintiffs' First Amended Complaint establishes that these documents were not delivered as allegedly required decades ago:

> BP intentionally did not provide notice of the plan change at least 15 days prior to the effective date of the plan amendment.

> BP provided no § 204(h) notice at the time of conversion from the BP America Retirement Plan (ARP) to the BP Retirement Accumulation Plan (RAP).

> BP never provided a summary plan description regarding the RAP.

(Doc. No. 47 at ¶¶ 122, 123, 136).

According to their Sur-Reply, these documents were due at the very latest in the 1989–90 time period. To quote Plaintiffs' Sur-Reply: "Issuance of a section 204(h) notice was required at the time of the conversion." (Doc. No. 70 at p 21). This was in 1989. The First Amended Complaint contends that the 204(h) notice should have been issued and since they were not Defendants are responsible for the "intentional non-disclosure of the disadvantages of the RAP conversion." Again, this all happened before 1990. The Plaintiffs knew the plan was being changed and knew that they did not receive these notices.

Plaintiffs' argument concerning the SPD (Count Two) is likewise undermined by their own pleadings:

> Section 104(b)(1) required if there was a modification or change described in section 102(a)(1), a summary description of such modification or change to be furnished not later than 210 days after the end of the plan year in which the change was adopted, to each participant.

(Doc. No. 70 at pp. 24–25). Even this time period ended decades ago.

---

[2] Plaintiffs' First Amended Complaint references later dates (in this century) on which they claim they should have received additional § 204(h) notices, but these allegations, while perhaps within the six-year period, do not support a claim upon which relief can be granted. (*See, e.g.*, Doc. No. 47 at ¶ 85).

One might hypothetically argue that Plaintiffs were not aware of the fact that these notices/SPD were required by law. This is not a defense. *See Brewer v. Bank of Am., N.A.*, No. 4:13-CV-638, 2015 WL 123775, at *4 (E.D. Tex. Jan. 7, 2015) aff'd, 627 F. App'x 358 (5th Cir. 2012) ("[I]gnorance of the law or of statute of limitations is insufficient to warrant tolling.") (internal citation omitted). Moreover, Plaintiffs have not pleaded that Defendants fraudulently hid or concealed the fact that these notices/SPD were not distributed.

These Counts are clearly barred by this statute of repose. They are exactly the type § 1113 was designed to prevent. These claims clearly accrued either at the effective date of the plan or the date when notices should have been delivered (which in this case preceded that date). *See Hirt v. Equitable Ret. Plan for Employees*, 450 F. Supp. 2d 331 (S.D.N.Y. 2006) aff'd, 285 Fed. App'x 802 (2d Cir. 2008).[3]

Count One and Count Two are dismissed.[4]

### B.    Count Four

In this Court's prior ruling, it preserved Defendants' right to move for dismissal under Rule 12(b)(6) that the Plaintiff had not stated a claim upon which relief could be granted. Count Four is just such a claim. The Court grants such a challenge to Count Four. The Plaintiffs state:

> THE COURT SHOULD DETERMINE THAT THE RAP AND BP MUST
> PRODUCE THE RECORD REQUESTED INCLUDING RECORDS MADE
> AVAILABLE TO THE OMBUDSMAN.

---

[3] Additionally, the requirements to distribute § 204(h) disclosures and the SPD are placed on the Plan Administrator. The current pleadings are somewhat ambiguous as to the identity of the Plan Administrator, but unless it is one of the Defendants, neither the RAP (the "Plan") nor BP can be held responsible under the allegations found in Count One and Count Two. The Fifth Circuit "has not recognized that where a plan names a plan administrator, an entity other than the named administrator may nonetheless be held liable as a de facto administrator." *Manuel v. Turner Indus. Group, LLC*, 14-599-SDD-RLB, 2016 WL 5349446, at *3 (M.D. La. Sept. 23, 2016).

[4] While dismissing these claims, the Court is not ruling on whether the underlying basis for these claims might ultimately constitute relevant evidence as to Plaintiffs' main contention.

In practical terms this pleading is a request for production dressed up as a cause of action. While this Court may yet order these items to be produced, the Plaintiffs have not cited any authority (and this Court knows of no authority, under ERISA or at common law) that provides for a cause of action based upon "the failure to produce documents given to an ombudsman." Nevertheless, as set out in their prayer and their opposition to the Motion to Dismiss, the actual relief sought by Plaintiffs is the reformation and restoration of what they consider their retirement benefits ought to be. While these records may be relevant in reaching that goal, alleging this as a cause of action will not aid that effort even if Plaintiffs prevailed. Count Four is dismissed. [5]

### C.     Count Three

This Court has already expressed its concern over the manner in which Plaintiffs have cast Count Three.

Defendants have moved for dismissal of this Count under various theories, including standing, failure to properly allege intentional and material misrepresentations and omission, and that the claims are barred by ERISA's statute of limitations and/or statute of repose. This Court finds that it cannot rule on these issues. Either these are governed or shaped by facts and, as such, more appropriately addressed pretrial, if at all, by a Motion for Summary Judgment, or they have been pleaded adequately albeit in a somewhat confusing manner. Therefore, with respect to Count Three, the Motion to Dismiss is denied; however, the Plaintiffs are ordered to replead Count Three, and only Count Three, in a manner that specifically states a recognized cause of action (be it for

---

[5] See footnote 4.

fraud, misrepresentation, and/or breach of promise or fiduciary duty) in a clear and succinct manner complying with the requirements of FED. R. CIV. P. 8 and, if applicable, FED. R. CIV. P. 9.[6]

The Court denies the Motion to Dismiss Count Three. Once Plaintiffs replead Count Three, the Court will not entertain another Motion to Dismiss. If the Defendants wish to pursue further dispositive motions concerning that Count, they will need to do so in the form of a properly submitted Motion for Summary Judgment.

## IV. Conclusion

The Motion to Dismiss Counts One, Two, and Four of the First Amended Complaint (Doc. No. 52) is granted and those Counts are dismissed. The Motion to Dismiss as it pertains to Count Three is overruled, but Plaintiffs are ordered to replead it (and only it) in a fashion that complies with the Federal Rules of Civil Procedure. This pleading should include a short and plain statement (including the supporting facts) that pertain to each Defendant and a clearly delineated cause of action—one which would support the relief sought against the Defendants if proven. If there is a claim for misrepresentation, fraud, or concealment on any other category set out in FED. R. CIV. P. 9, Plaintiffs' claim must, of course, comply with the pleading requirements of Rule 9. This Second Amended Complaint shall be filed by April 5, 2019 and Defendants shall respond by April 26, 2019.

SIGNED at Houston, Texas this _13_ day of March, 2019.

Andrew S. Hanen
United States District Judge

---

[6] It is suggested that if Plaintiffs contend that their Count Three claims are not barred by § 1113 that they plead facts that invoke the statutory exceptions. If they choose to do so, these allegations must be in compliance with Rule 9 specificity requirements.