United States District Court
Southern District of Texas

**ENTERED**

March 12, 2021

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FREDRIC A. GUENTHER, ET AL., | § | |
| | § | |
| Plaintiffs. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:16-CV-00995 |
| | § | |
| BP RETIREMENT | § | |
| ACCUMULATION PLAN, ET AL., | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM AND RECOMMENDATION**

This Memorandum and Recommendation addresses Plaintiffs' Motion for Class Certification and Appointment of Class Counsel. *See* Dkt. 191. The motion to certify has been referred to me for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* Dkt. 236. For the reasons set forth below, I recommend that the motion be **GRANTED**.

## **BACKGROUND**

Plaintiffs Fredric A. Guenther, Walton Fujimoto, and Les Owen ("Plaintiffs") began their employment with Standard Oil of Ohio ("Sohio") in the 1970s. In 1987, BP Corporation North America Inc. ("BP") acquired a controlling interest in Sohio. When BP acquired Sohio, Plaintiffs and other former Sohio employees were subject to Sohio's retirement plan ("Sohio heritage plan participants"). On January 1, 1988, BP developed the BP America Inc. Retirement Plan (the "ARP"), which encapsulated the Sohio retirement plan, bringing the Sohio heritage plan participants under the ARP. *See* Dkt. 192-1. Under the ARP, participant benefits

were determined based on a complex collection of final average pay formulas applicable to various sub-groups of participants.

Effective January 1, 1989, the ARP was "amended and restated in its entirety . . . and renamed the BP America Retirement Accumulation Plan" (the "RAP"). Dkt. 192-2 at 4. Important here, under the RAP, "benefits were (for employees under age 50 on January 1, 1989) determined through a single cash balance formula." Dkt. 213 at 4. No longer were benefits determined from a final average pay formula. At the time of the change, BP purportedly made various representations to Sohio heritage plan participants that the RAP would be as good as, or better than, the ARP, and that BP bore all the risks of the RAP.

Plaintiffs have since determined that BP's purported representations were untrue or misleading and filed this suit on behalf of themselves and all other similarly situated Sohio heritage plan participants. The Plaintiffs allege that plan participants were harmed, and that BP violated the Employee Retirement Income Security Act of 1974 ("ERISA") when it switched from a final average pay benefit formula to a cash balance formula. Plaintiffs "seek equitable reformation of the [RAP] plan" under "ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)." Dkt. 82 at 28.

Plaintiffs have moved to certify the following class and subclass under Federal Rule of Civil Procedure 23(b)(2):

**Proposed General Class:** All persons under age 50 as of January 1, 1989, who were active participants in the BP America Retirement Accumulation Plan as of January 1, 1989, and whose retirement benefit under the BP America Inc.

2

Retirement Plan (ARP) exceeds the retirement benefit offered (or that will be offered) by the BP America Retirement Accumulation Plan (RAP), as amended on the benefit commencement date, and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.[1]

**Proposed Subclass:** All persons under age 50 as of January 1, 1989, and who were active participants in the BP America Retirement Accumulation Plan as of January 1, 1989, and whose retirement benefit under the BP America Inc. Retirement Plan (ARP) exceeds the retirement benefit offered (or that will be offered) by the BP America Retirement Accumulation Plan (RAP), as amended on the benefit commencement date, and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order who signed a release upon separation of employment. This class is a subset of the first class.

## LEGAL STANDARD FOR CLASS CERTIFICATION

To justify a departure from the general "rule that litigation is conducted by and on behalf of the individual named parties only," representative plaintiffs must show that they are "part of [a] class" of plaintiffs, and that they "possess the same interest and suffer the same injury as the class members." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011) (quotation omitted).

---

[1] The original language of Plaintiffs' class and subclass is stated in Plaintiffs' Amended Motion for Class Certification and Appointment of Class Counsel. *See* Dkt. 191 at 13. After Defendants lodged certain criticism of that language in their response, Plaintiffs modified the class and subclass definition. *See* Dkt. 221 at 16 n.14. Here, I use the modified definitions.

> To maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable. This requirement is an implied prerequisite of Rule 23. However, the court need not know the identity of each class member before certification; ascertainability requires only that the court be able to identify class members at some stage of the proceeding. If the proposed class is ascertainable, the party seeking certification must also comply with Federal Rule of Civil Procedure 23.

*Seeligson v. Devon Energy Prod. Co., L.P.*, 761 F. App'x 329, 333 (5th Cir. 2019) (cleaned up). To ensure that the named plaintiffs are the appropriate representatives of the class whose claims they wish to litigate, Rule 23(a) imposes four requirements—numerosity, commonality, typicality, and adequate representation. *See Wal-Mart* 564 U.S. at 349.

Numerosity requires a showing that "the class is so numerous that joinder of all members is impracticable." *See* FED. R. CIV. P. 23(a)(1). Commonality requires a showing that "there are questions of law or fact common to the class." *Id.* Typicality refers to the requirement that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Id.* And the adequate-representation requirement mandates a showing that the representative party and the named class counsel "will fairly and adequately protect the interests of the class." *Id. See also Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007).

Even where these four requirements are satisfied, certification is only permitted if there is an additional showing that the class action fits into at least one of three specified categories set forth in Rule 23(b). *See Feder v. Elec. Data Sys.*

*Corp.*, 429 F.3d 125, 129 (5th Cir. 2005). These categories are: (1) cases in which prosecuting separate actions by or against individual class members would create a risk of inconsistent adjudication; (2) cases in which the party opposing the class has acted or refused to act on grounds that apply generally to the class so that final injunctive or declaratory relief is appropriate with respect to the class as a whole; or (3) cases in which there are questions of law or fact common to class members that predominate over questions affecting only individual members and the class action is superior to other methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b).

The Fifth Circuit recently revisited the high standard and "rigorous analysis" required to certify a class action under Rule 23. *See Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 545 (5th Cir. 2020). The *Chavez* panel emphasized that Rule 23 is not a pleading standard, and explained that courts will often have to look beyond the pleadings to "understand the claims, defenses, relevant facts, and applicable substantive law" to determine whether certification is appropriate in a given case. *Id.* at 546 (quotation omitted). The Fifth Circuit also instructed district courts to rigorously consider both Rule 23(a)'s four prerequisites and the Rule 23(b) class type before certifying a class. *See id.* at 546. Plaintiffs have the burden of showing that Rule 23's requirements are met. *See Wal-Mart*, 564 U.S. at 350–51.

## ANALYSIS

### A.   ASCERTAINABILITY

Defendants contend that the proposed class cannot be certified because the class is not adequately defined and clearly ascertainable. To certify a class, the Plaintiffs must show that there is "an ascertainable class of persons to be represented by the proposed class representative." *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). *See also DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (explaining that "the class sought to be represented must be adequately defined and clearly ascertainable"). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Mitchell v. State Farm Fire & Cas. Co.*, 327 F.R.D. 552, 560 (N.D. Miss. 2018). At the certification stage, it "is not necessary that the class be so clearly ascertainable that every potential member can be readily identified." *Id.* (quotation omitted).

Plaintiffs define the proposed general class as:

> All persons under age 50 as of January 1, 1989 and who were active participants in the BP America Retirement Accumulation Plan as of January 1, 1989, and whose retirement benefit under the BP America Inc. Retirement Plan (ARP) exceeds the retirement benefit offered (or that will be offered) by the BP America Retirement Accumulation Plan (RAP), as amended on the benefit commencement date, and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

Dkt. 221 at 16 n.14.

Defendants do not dispute that reference to objective materials will easily reveal whether a putative class member was an ARP participant and under 50 years

old on January 1, 1989. Defendants instead focus on this language in the class definition: "whose retirement benefit under the BP America Inc. Retirement Plan (ARP) exceeds the retirement benefit offered (or that will be offered) by the BP America Retirement Accumulation Plan (RAP)." Dkt. 221 at 16 n.14. Defendants argue that it will be difficult to determine the difference between potential benefits under the ARP and the RAP because: (1) the ARP "formula . . . has not existed for them since 1988"; (2) the calculation of benefits under the ARP "would require re-creation of more than thirty years of payroll and service time records to allow for each individual's pension benefit to be recalculated"; and (3) overall, such a calculation effort will essentially require individualized mini trials on the issue of damages as to each Sohio heritage plan participant just to determine class membership. Dkt 213 at 18. I am unpersuaded by these arguments.

In scrutinizing the proposed class, I am mindful that the Fifth Circuit has said that a "precise class definition is necessary to identify properly those entitled to relief, those bound by the judgment, and those entitled to notice." *In re Monumental Life Ins. Co.*, 365 F.3d 408, 413 (5th Cir. 2004) (quotation omitted). But the Fifth Circuit has also acknowledged that, absent notice and opt-out rights, precision of the class definition may be less important. *See id.* ("Some courts have stated that a precise class definition is not as critical where certification of a class for injunctive or declaratory relief is sought under rule 23(b)(2)."). In this case, Plaintiffs seek equitable reformation of the RAP based on their claim that BP misled Sohio heritage plan participants regarding the impact the RAP would have

on their retirement benefits. Keeping this allegation in focus, it seems clear to me that Defendants' arguments regarding ascertainability are of the variety discussed in *Forbush v. J.C. Penney Co.*, 994 F.2d 1101 (5th Cir.1993), *abrogated on other grounds by Wal-Mart*, 564 U.S. 338.

In *Forbush*, the "defendant argued that the class was not defined with sufficient specificity and was 'hopelessly "circular," as the court must first determine whether an employee's pension benefits were improperly reduced before that person may be said to be a member of the class.'" *In re Rodriguez*, 695 F.3d 360, 370 (5th Cir. 2012) (quoting *Forbush*, 994 F.2d at 1105). The *Forbush* court found the argument not only "meritless" but also explained that accepting it "would preclude certification of just about any class of persons alleging injury from a particular action." 994 F.2d at 1105. The court found that the putative class members were "linked by [a] common complaint," and reasoned that "the possibility that some may fail to prevail on their individual claims will not defeat class membership." *Id.*

In light of *Forbush*, I do not think the class needs to be more precisely defined at this time. To be clear, the crux of Plaintiffs' claim concerns a precise set of Sohio heritage plan participants (those age 50 as of January 1, 1989 and who were active participants in the ARP as of January 1, 1989), who may well have been impacted by the misrepresentations alleged in this suit. If those misrepresentations occurred and equitable reformation of the RAP is ultimately awarded, Defendants will then take on the responsibility to apply the reformed

language to all Sohio heritage plan participants meeting the age and the ARP participation requirements. If such employees have already received retirement benefits, Defendants will have to determine if any necessary payment is due. If such employees have not yet retired, Defendants will apply the reformed plan upon their retirement.

In any event, I do not think Defendants' arguments concerning such future benefit calculations render the class unascertainable at this time. Consequently, I find that the class is adequately defined and clearly ascertainable.

**B.    RULE 23(a)**

As noted above, Rule 23 requires a plaintiff seeking to certify a class to establish four elements: numerosity, commonality, typicality, and adequacy. *See Wal-Mart*, 564 U.S. at 345. Each of the Rule 23 factors must be analyzed independently. *See Stirman v. Exxon Corp.*, 280 F.3d 554, 563 n.7 (5th Cir. 2002). In the analysis that follows, I find that Plaintiffs have satisfied their burden of showing that the Rule 23(a) requirements are satisfied.

**1.    Numerosity**

Rule 23(a) first requires that the proposed class be so numerous that joinder of all members is impracticable. FED. R. CIV. P. 23(a)(1). To satisfy the numerosity requirement, the "plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981). The focus under Rule 23(a) is "whether joinder of all members is practicable in view of the numerosity

of the class and all other relevant factors." *Id.* (quotation omitted). Relevant factors to consider when deciding whether joinder is impracticable include the geographic distribution of the class, "the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624–25 (5th Cir. 1999). Here, numerosity is satisfied.

Defendants argue that Plaintiffs have offered nothing more than an "unsupported guess at the number of potential class members." Dkt. 213 at 33. I disagree. Plaintiffs have pointed to several documents in the record describing the potential class as being several hundred people, including an email chain between BP's counsel and a Deputy Ombudsman tasked with investigating the very issues underlying this suit. *See* Dkt 224-9. In that email chain, subject line "SOHIO Heritage Issues," the Deputy Ombudsman sent an email saying, "I understand there are about 2,000 people that are impacted." *Id.* at 2. BP's counsel responded: "680. There are only 680 heritage [S]ohio employees. There is a lot of misinformation going around." *Id*. This communication, standing alone, convinces me that the proposed class is numerous. Additionally, given that the plan in dispute applied to a precise group of Sohio heritage plan participants, it's reasonably clear that Plaintiffs were not the only persons subject to the plans. *See Mitchell*, 327 F.R.D. at 561 (finding numerosity and explaining that "the policies entered between [Defendant] and its insureds are standardized policies" using a default cash value payment method such that the plaintiff was unlikely to be "the

only person covered by such a policy in the State of Mississippi" to have the "actual cash value . . . subject to labor depreciation"). The numerosity requirement is met. *See Prause v. TechnipFMC, PLC*, 4:17-CV-2368, 2020 WL 3549686, at *2–3 (S.D. Tex. Mar. 9, 2020) ("Although Plaintiff has not identified the precise number of potential class members, he submitted evidence of numerosity"; and, "[a]bsent any argument or evidence to the contrary, the Court finds that the evidence is sufficient to establish numerosity.").

### 2.    Commonality

To satisfy the commonality requirement under Rule 23(a)(2), Plaintiffs must demonstrate that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The Supreme Court's 2011 decision in *Wal-Mart* "heightened the standards for establishing commonality." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 839 (5th Cir. 2012). In the wake of *Wal-Mart*, the claims of all class members "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350.

While "any competently crafted class complaint literally raises common questions," commonality goes further and "'requires the plaintiff to demonstrate that the class members have suffered the same injury.'" *Stukenberg*, 675 F.3d at 840 (quoting *Wal-Mart*, 564 U.S. at 350–51). Under *Wal-Mart*, it's "not the raising of common 'questions'—even in droves—but rather, the capacity of a class-

wide proceeding to generate common *answers* apt to drive the resolution of the litigation." 564 U.S. at 350 (quotation omitted). The ability to generate common answers can be impeded by "[d]issimilarities within the proposed class." *Id.* (quotation omitted). As the Fifth Circuit recently observed, "class members must raise at least one contention that is central to the validity of each class member's claims." *In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014).

In the present case, Plaintiffs contend the commonality requirement is met because the claims of all class members raise common factual and legal questions that will generate common questions. According to Plaintiffs, the most common questions of fact with respect to the class are:

- Whether BP prepared and uniformly disseminated to all Sohio heritage plan participants communications which did not explain the risk to pension benefit accrual caused by interest rate fluctuations;

- Whether BP disseminated communication to all Sohio heritage plan participants that did not warn the new plan removed the early retirement subsidy and how that affected the accrual of retirement benefits; and

- Whether BP uniformly disseminated communications to all Sohio plan participants that the new retirement plan would be comparable to, or better than, the old plan, and the participants reasonably understood just that.

Dkt. 191 at 18. Plaintiffs further assert that the most common questions of law with respect to the class and subclass are:

- Whether BP's uniformly disseminated communications violated ERISA;

- Whether Plaintiffs are entitled to a plan reformation under ERISA § 502(a)(3) based upon the representations BP made in 1989; and

- • With respect to the subclass, what effect, if any, the execution of a release has on the participant's claim that they are entitled to plan reformation under ERISA § 502(a)(3).

*Id*. at 18–19.

I agree with Plaintiffs. The resolution of these factual and legal issues is potentially dispositive to the plaintiffs' claims for affirmative equitable reformation brought on behalf of all members of the putative class.

In challenging commonality, Defendants argue that (1) determining whether a participant is better or worse off under the RAP does not present a question capable of common resolution, (2) individualized determinations as to causation will prevent a common liability finding, and (3) Plaintiffs' reliance on allegations of oral misrepresentations and employees' subjective perceptions prevent any finding of commonality. *See* Dkt. 213 at 21–26. These arguments miss the mark.

As I have previously explained:

It is axiomatic that there will always be some differences among class members. Individual factual differences among the individual litigants or groups of litigants will not, by themselves, preclude a finding of commonality. The critical question is whether the resolution of common questions of fact and law would have the capacity to generate common answers apt to drive the resolution of the litigation.

*Booth v. Galveston Cnty.*, No. 3:18-CV-00104, 2019 WL 1129492, at *5 (S.D. Tex. Mar. 12, 2019) (cleaned up). In this case, I think resolution of the common questions regarding BP's uniformly disseminated communications and their compliance or noncompliance with ERISA will obviously apply to every class member. The arguments advanced by Defendants do not change this fact. As

explained above, the calculation of damages is irrelevant at this stage. *See In re Deepwater Horizon*, 739 F.3d at 810–11 ("[T]he legal requirement that class members have all 'suffered the same injury' can be satisfied by an instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse."). This undermines Defendants' first and second arguments, which both directly relate to damage calculations. Moreover, I find Defendants' third argument unpersuasive. There's nothing problematic about the fact that the live complaint describes more communications (oral and uniformly disseminated communications) than the motion for class certification (just uniformly disseminated communications). Although Defendants cite *Severin v. Project Ohr, Inc.*, No. 10 CIV. 9696(DLC), 2012 WL 2357410 (S.D.N.Y. June 20, 2012), as "denying class certification, in part, because theory presented in motion for class certification was inconsistent with complaint," Dkt. 213 at 25, the case did not so hold. In fact, the *Severin* court made plain that its scrutiny of the complaint was based on the fact that the plaintiffs were "seek[ing] to certify a class on a theory *at which their complaint did not hint*." *Id.* at *11 (emphasis added). That is certainly not the case here. The complaint does more than "hint" at the existence of oral and written uniformly disseminated communications.

Lastly, I want to emphasize that, in accordance with Supreme Court precedent, I am not considering the merits of Plaintiffs' claims at this stage. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs

14

have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." (quotation omitted)); *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005) ("Class certification hearings should not be mini-trials on the merits of the class or individual claims." (citation omitted)). This case meets the commonality requirement of Rule 23(a)(2).

### 3.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (cleaned up). The test for typicality is not particularly demanding. *See Mullen*, 186 F.3d at 625. As the Fifth Circuit has noted:

> Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.

*Stirman*, 280 F.3d at 562 (quotation omitted).

The Supreme Court has observed that the "commonality and typicality requirements of Rule 23(a) tend to merge," as both requirements "serve as guideposts for determining . . . whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 564 U.S. at 349 n.5.

15

Here, the claims Plaintiffs assert share the same essential characteristics as the claims of the putative class members. Because their claims arise from the same course of conduct and are brought under the same legal theory, I conclude that Plaintiffs have met the typicality standard set forth in Rule 23(a)(3).

Defendants argue that Fujimoto and other class members may have signed one of several releases barring their ERISA claim. This "does not defeat typicality" because "[t]here is no evidence that [Fujimoto's] rebuttal of the release defense will take a significant amount of time or distract [him] from pursuing the class action." *McDaniel v. Credit Sols. of Am., Inc.*, No. 3:08-CV-0928-N, 2012 WL 13102240, at *10 (N.D. Tex. Mar. 21, 2012). In this same vein, Defendants also argue that Plaintiffs may be subject to various affirmative defenses, including statute of limitations and waiver arguments. This line of argument is not compelling because the availability of "a unique defense against the Plaintiff" does not prevent a finding of typicality. *Vine v. PLS Fin. Servs., Inc.*, 331 F.R.D. 325, 334 (E.D. Tex. 2019). *See also Feder*, 429 F.3d at 137 (rejecting "appellants' claim that the presence of an arguable unique defense necessarily destroys typicality"). Indeed, as the *Vine* court explained, the critical inquiry when considering the impact of defenses is whether the defenses are "unique" and "may be a major focus of the litigation." 331 F.R.D. at 334 (quotation omitted) (collecting cases). Nothing in the briefing demonstrates that the defenses are unique or likely to be a major focus of this litigation. Lastly, Defendants take another stab at arguing that proof of Plaintiffs' claims will be too individualized, owing in large part to the fact that

each claim will require scrutiny of certain oral representations. As mentioned above, Plaintiffs' motion to certify focuses on written uniformly disseminated communications, not oral communications. This argument seems misdirected. Accordingly, I find that Plaintiffs' claims are typical of the class.

### 4.    Adequate Representation

Rule 23(a) finally requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). It is improper for a district court to simply presume that Plaintiffs and their counsel are adequate representatives. Instead, the party seeking to certify the class must affirmatively prove that he is an adequate class representative. *See Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 481 (5th Cir. 2001). The adequacy requirement is not a mere formality, but is vital to protect the rights of class members. Because class members are bound by the judgment, "the court must be especially vigilant to ensure that the due process rights of all class members are safeguarded through adequate representation at all times." *Id.* at 480. The adequacy requirement also "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

The adequacy analysis encompasses two separate inquiries: (1) the willingness and ability of the named plaintiff "to take an active role in and control the litigation and to protect the interests of absentees"; and (2) "the zeal and competence of the representative's counsel." *Berger*, 257 F.3d at 479 (brackets

omitted) (quoting *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982)).

**Named Plaintiff:** The Fifth Circuit has "identified a 'generic standard' for the adequacy requirement, noting that 'the class representatives [must] possess a sufficient level of knowledge and understanding to be capable of 'controlling' or 'prosecuting' the litigation." *Feder*, 429 F.3d at 131–32 (quoting *Berger*, 257 F.3d at 482–83). But class representatives "need not be legal scholars," *id.* at 132 n.4 (quotation omitted), and "are entitled to work with, and rely upon, their counsel in pursuing their claims and navigating the complicated legal and factual issues associated with" complex litigation. *Stoffels v. SBC Commc'ns, Inc.*, 238 F.R.D. 446, 455 (W.D. Tex. 2006). A class representative is considered adequate when he has "familiarity with the complaint and with the concept of a class action." *Horton*, 690 F.2d at 484.

Plaintiffs easily satisfy the adequacy requirement. Each plaintiff has volunteered his time to serve as a class representative and states a genuine willingness to vigorously prosecute the interests of the class. To date, Plaintiffs have gathered documents, sat for depositions, and met numerous times with counsel to discuss the case. Plaintiffs possess a fundamental understanding of the case sufficient to allow them to actively participate in the lawsuit as it progresses. Plaintiffs' interests appear to align with the putative class such that I am confident that there is no conflict of interest between Plaintiffs and the class they seek to represent.

Defendants challenge Plaintiffs' adequacy to represent the proposed class on a few grounds. First, Defendants again refer to the purported defenses that they believe may apply to each Plaintiff. Defendants argue that "the inherent conflict of interest presented by these individual defenses" makes Plaintiffs incapable of, "constitutionally, represent[ing] this class." Dkt. 213 at 31. Notably, Defendants cite no authority for this position. Also notable, the only conflict of interest Defendants identify is the mere existence of potentially strong defenses. As explained above in the typicality section, defenses are problematic only when they threaten to become a major focus of the litigation. Defendants have not shown that to be the case.

Next, Defendants argue that Guenther and Fujimoto "did better under the RAP formula than under the ARP"; thus, "Guenther and Fujimoto cannot be adequate class representatives because they lack standing to bring this action." *Id.* at 32. This argument fails. The record before me does not establish the factual predicate that Guenther and Fujimoto "did better under the RAP formula than under the ARP." *Id.* The record merely reveals, as might be expected, that a fact issue exists on this point.

**Counsel:** Plaintiffs' counsel have competently and zealously pursued the interests of the Plaintiffs and the putative class over more than four years. The team of lawyers, combined, have extensive experience in complex litigation, multi-district litigation, employment law and ERISA representation, accounting, and class action cases. The adequacy of counsel is not in dispute.

In conclusion, the Court finds that the adequacy requirement of Rule 23(a)(4) has been satisfied.

## C.    RULE 23(b)(2)

In addition to satisfying the four requirements of Rule 23(a), a proposed class must fit one of the types of class actions listed in Rule 23(b). Once the minimum requirements of Rule 23(a) are satisfied, subsection 23(b) assures that there is a strong enough reason for proceeding as a class action. Here, Plaintiffs seek to certify the class and subclass under Rule 23(b)(2). To do so, they must show that the Defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2).

The Supreme Court has stated that the "key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted." *Wal-Mart*, 564 U.S. at 360 (quotation omitted). The Fifth Circuit has previously held that Rule 23(b)(2) certification requires that "(1) class members must have been harmed in essentially the same way; (2) injunctive relief must predominate over monetary damage claims; and (3) the injunctive relief sought must be specific." *Yates v. Collier*, 868 F.3d 354, 366 (5th Cir. 2017) (cleaned up). Plaintiffs easily satisfy these requirements.

As explained above, the harm alleged here flows from company-wide representations made to Sohio heritage plan participants. The class members request specific relief—a declaratory judgment requiring plan reformation—that

20

would remedy the alleged harms. *See* Dkt. 82 at 25 ("The requirements of Fed. R. Civ. P. 23(b)(2) are satisfied in that the BP's actions, and the Plan's actions, affected all class members in the same manner making appropriate final declaratory relief with respect to the class as a whole."). Importantly, reformation has been found to be a form of declaratory relief in a similar context. *See Amara v. CIGNA Corp.*, 925 F. Supp. 2d 242, 263–64 (D. Conn. 2012), *aff'd*, 775 F.3d 510 (2d Cir. 2014). The class members also request no monetary damages whatsoever, unlike the class members in *Wal-Mart* who sought individualized amounts of backpay. 564 U.S. at 360. Accordingly, the Proposed General Class and Subclass ought to be certified.[2]

## D.   APPOINTMENT OF CLASS COUNSEL UNDER RULE 23(g)

Plaintiffs request that their current attorneys be appointed class counsel pursuant to Rule 23(g). Under Rule 23(g), "a court that certifies a class must appoint class counsel." FED. R. CIV. P. 23(g)(1). In appointing class counsel, courts must consider: (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A). Class counsel

---

[2] Plaintiffs also seek to certify the class and subclass under Rule 23(b)(3). Because I "find that plaintiffs have satisfied Rule 23(b)(2), [I] need not determine whether plaintiffs meet the requirements of Rule 23(b)(3)." *Love v. City of Chi., Ill.*, No. 96 C 396, 1997 WL 120041, at *6 (N.D. Ill. Mar. 11, 1997). *See also Brooks v. Pressed Juicery*, Inc., 336 F.R.D. 484, 492 (E.D. Cal. 2020) ("Given the significant suitability of this controversy to singular injunctive relief, this court finds Rule 23(b)(2) is satisfied, and need not reach plaintiff's argument regarding Rule 23(b)(3).").

has a duty to "fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(g)(4).

I find that counsel for the named Plaintiffs fulfill the requirements of Rule 23(g). Plaintiffs' attorneys have investigated the case, engaged in voluminous discovery, drafted numerous and lengthy briefs, and competently participated in argument. The proposed class counsel have extensive experience as described above in the adequacy section. Proposed class counsel have demonstrated their familiarity with the applicable law through their briefings and oral arguments. They have also shown that they will devote substantial resources to representing the class. Therefore, I recommend that Plaintiffs' current attorneys be appointed as class counsel for both the General Class and the Subclass.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above, I recommend that the Motion for Class Certification and Appointment of Class Counsel (Dkt. 191) be **GRANTED** and the following class and subclass be certified under Rule 23(b)(2):

> **General Class:** All persons under age 50 as of January 1, 1989 who were active participants in the BP America Retirement Accumulation Plan as of January 1, 1989, and whose retirement benefit under the BP America Inc. Retirement Plan (ARP) exceeds the retirement benefit offered (or that will be offered) by the BP America Retirement Accumulation Plan (RAP), as amended on the benefit commencement date, and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

> **Subclass:** All persons under age 50 as of January 1, 1989, and who were active participants in the BP America Retirement Accumulation Plan as of January 1, 1989, and whose retirement benefit under the BP America Inc. Retirement Plan (ARP) exceeds the retirement benefit offered (or that will be offered) by the BP America Retirement

Accumulation Plan (RAP), as amended on the benefit commencement date, and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order who signed a release upon separation of employment. This class is a subset of the first class.

I also recommend that Plaintiffs' current attorneys—Peter Steilberg and Philip R. Meade of Merrick, Hofstedt & Lindsey, P.S., and Leander L. James, IV, and Susan P. Weeks of James, Vernon & Weeks, P.A.—be appointed as class counsel for both the General Class and the Subclass.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

Signed on this 12th day of March 2021.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE