# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| FREDRIC A. GUENTHER, an individual; and WALTON FUJIMOTO, an individual, and LESLIE OWEN, an individual, | § § § § | |
| Plaintiffs | § § | |
| v. | § § | Civil Action No. 4:16-CV-995 |
| BP RETIREMENT ACCUMULATION PLAN, by its Plan Administrator, the Senior Vice President of Human Resources of BP CORPORATION NORTH AMERICA INC.; and BP CORPORATION NORTH AMERICA INC., a corporation, | § § § § § § § § | |
| Defendants. | § § | |

## **DEFENDANTS' MOTION FOR JUDGMENT ON PARTIAL FINDINGS**

## **TABLE OF CONTENTS**

**Page**

NATURE AND STAGE OF THE PROCEEDING .................................................. 1

STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT .......................... 1

ARGUMENT ............................................................................................. 3

I.      There Are No Statutory Disclosure Claims At Issue. ....................... 3

II.     Plaintiffs Cannot Recover For Fiduciary Breach Because They
        Failed To Sue The Fiduciary. ......................................................... 5

III.    Plaintiffs' Fiduciary Breach Claim is Untimely Under 29 U.S.C.
        § 1113. ....................................................................................... 15

        a.      *Plaintiffs' claim is subject to—and barred by—ERISA's
                statute of repose.* ............................................................ *16*

        b.      *Plaintiffs' "actual knowledge" of the claim asserted does not
                extend their time to file suit.* ............................................ *20*

        c.      *There is no evidence of fraud or concealment.* ................... *23*

        d.      *ERISA's statute of repose is not subject to equitable tolling.* .......... *27*

IV.     The Evidence Does Not Establish A Knowing or Intentional
        Misrepresentation. ....................................................................... 29

        a.      *Plaintiffs Have Not Met Their Burden of Proof.* ................... *29*

        b.      *Plaintiffs' attempts to claim omissions in the 1989
                communications are based on obligations the law did not
                create.* ........................................................................... *37*

        c.      *This case is not Amara or Osberg.* .................................... *41*

V.      Plaintiffs' Continued Reliance On Alleged Oral Statements and
        Isolated Communications Prevents Class-wide Recovery. ................ 45

VI.     Fujimoto's Release Bars His Claim, And Those Of The Sub-Class
        He Represents. ............................................................................ 48

CONCLUSION .......................................................................................... 51

i

## **TABLE OF AUTHORITIES**

**Page(s)**

Cases

*Acosta v. Pac. Enterprises*,
  950 F.2d 611 (9th Cir. 1991), *as amended on reh'g* (Jan. 23, 1992) ............................ 6

*Adams v. The Brink's Co.*,
  420 F. Supp. 2d 523 (W.D. Va. 2006) ......................................................................... 26

*Aetna Health Inc. v. Davila*,
  542 U.S. 200 (2004) ...................................................................................................... 12

*Alasin v. Westinghouse Savannah River Co.*,
  No. CIV.A.1:05-1045HFF-B, 2008 WL 2169427 (D.S.C. May 23,
  2008) .............................................................................................................................. 48

*Amara v. Cigna Corp.*,
  534 F. Supp. 2d 288 (D. Conn. 2008) .......................................................................... 41

*Amara v. CIGNA Corp.*,
  775 F.3d 510 (2d Cir. 2014) .......................................................................................... 44

*Bacon v. Stiefel Lab'ys, Inc.*,
  No. 09-21871-CV-KLNG, 2011 WL 4944122 (S.D. Fla. Oct. 17, 2011) .................. 51

*Bannistor v. Ullman*,
  287 F.3d 394 (5th Cir. 2002) ........................................................................................... 7

*Barnes v. Lacy*,
  927 F.2d 539 (11th Cir. 1991) ...................................................................................... 35

*In re BP P.L.C. Sec. Litig.*,
  2017 WL 914995 (S.D. Tex. Mar. 8, 2017) ................................................................ 36

*In re BP p.l.c. Sec. Litig.*,
  No. 4:10-CV-4214, 2015 WL 6674576 (S.D. Tex. Oct. 30, 2015) ............................ 12

*Browdy v. Hartford Life & Accident Ins. Co.*,
  630 F. App'x 278 (5th Cir. 2015) ................................................................................. 37

*Burlington N. & Santa Fe Ry. Co. v. Skinner Tank Co.*,
  419 F.3d 355 (5th Cir. 2005) ........................................................................................ 17

*Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc. ("CalPERS")*,
    582 U.S. 497 (2017) ................................................................................... 28

*Callery v. Exxonmobil Corp.*,
    No. CV H-21-1086, 2021 WL 3711180 (S.D. Tex. Aug. 20, 2021) .......................... 39

*Chaplin v. NationsCredit Corp.*,
    307 F.3d 368 (5th Cir. 2002) ............................................................... 48, 50

*Chavez v. Sumner*,
    No. 10-0313, 2012 WL 13059711 (S.D. Tex. 2012) .................................... 24

*Christianson v. Colt Indus. Oper. Corp.*,
    486 U.S. 800 (1988) ............................................................................... 4

*Cigna Corp. v. Amara*,
    563 U.S. 421 (2013) ..................................................................... 14, 41, 44

*Clayton v. ConocoPhillips Co.*,
    722 F.3d 279 (5th Cir. 2013) ............................................................... 49

*Corcoran v. Bell Atlantic Corp.*,
    159 F.3d 1350 (3d Cir. 1998) ............................................................... 21

*Curtiss–Wright Corp. v. Schoonejongen*,
    514 U.S. 73 (1995) ............................................................................... 39

*D & S Marine Transp., L.L.C. v. S & K Marine, L.L.C.*,
    No. CIV.A. 14-2048, 2015 WL 5838220 (E.D. La. Oct. 7, 2015) .......................... 11

*De Vito v. Liquid Holdings Group, Inc.*,
    No. CV156969KMJBC, 2018 WL 6891832 (D.N.J. Dec. 31, 2018) .......................... 11

*Dekalb Cnty. Pension Fund v. Transocean Ltd.*,
    817 F.3d 393 (2d Cir. 2016) ............................................................... 11

*Dusek v. JPMorgan Chase & Co.*,
    832 F.3d 1243 (11th Cir. 2016) ......................................................... 10

*In re Dynegy, Inc. ERISA Litig.*,
    309 F. Supp. 2d 861 (S.D. Tex. 2004) ................................................... 29

*U.S. ex rel Erskine v. Baker*,
    213 F.3d 638 (5th Cir. 2000) ............................................................... 28

*Fed. Deposit Ins. Corp. for Colonial Bank v. First Horizon Asset Sec. Inc.*,
    291 F. Supp. 3d 364 (S.D.N.Y. 2018) ........................................................................ 10

*Fitzwater v. CONSOL Energy, Inc.*,
    No. 1:17-CV-03861, 2019 WL 5191245 (S.D.W. Va. Oct. 15, 2019) ........................ 47

*In re Ford Motor Co.*,
    591 F.3d 406 (5th Cir. 2009) ..................................................................................... 4

*Gosselink v. Am. Tel. & Tel., Inc.*,
    No. CIV.A. H-97-3854, 1999 WL 33737341 (S.D. Tex. Aug. 4, 1999) .............. 17, 24

*Grp. 1 Auto., Inc. v. Aetna Life Ins. Co.*,
    No. 4:20-CV-1290, 2020 WL 8299592 (S.D. Tex. Nov. 9, 2020) ......................... 7, 34

*United States ex rel. Guzder v. MKM Engineers, Inc.*,
    No. 05-895, 2010 WL 11595351 (S.D. Tex. Jan. 14, 2010) ........................................ 4

*Haviland v. Metro. Life Ins. Co.*,
    730 F.3d 563 (6th Cir. 2013) ............................................................................... 30, 40

*Holmberg v. Armbrecht*,
    327 U.S. 392 (1946) ............................................................................................ 27, 28

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999) ................................................................................................. 21

*Intel Corp. Inv. Policy Comm. v. Sulyma*,
    140 S. Ct. 768 (2020) ........................................................................................ *passim*

*Interfirst Bank of Abilene, N.A. v. Lull Mfg.*,
    778 F.2d 228 (5th Cir. 1985) ..................................................................................... 2

*Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*,
    555 U.S. 285 (2009) ................................................................................................. 51

*Khan v. Am. Intern. Grp, Inc.*,
    654 F. Supp. 2d 617 (S.D. Tex. 2009) ...................................................................... 39

*Klaas v. Allstate Ins. Co.*,
    21 F.4th 759 (11th Cir. 2021) ............................................................................ *passim*

*Ladouceur v. Credit Lyonnais*,
    584 F.3d 510 (2d Cir. 2009) ..................................................................................... 46

iv

*Lemberg v. Scottsdale Healthcare Corp. Health Plan*,
No. CV-11-00271-PHX-ROS, 2013 WL 12097449 (D. Ariz. Feb. 4,
2013) ............................................................................................................... 47

*Lockheed Corp. v. Spink*,
517 U.S. 882 (1996) ...................................................................................... 21

*Martin v. Shell Oil Co.*,
198 F.R.D. 580 (D. Conn. 2000) .................................................................... 47

*Martinez v. Schlumberger, Ltd.*,
338 F.3d 407 (5th Cir. 2003) ..................................................................... 5, 21

*Martinez v. United States Postal Service*,
No. CIV.A. B-06-186, 2007 WL 1468773 (S.D. Tex. May 18, 2007) ........................ 9

*McCall v. Burlington N./Santa Fe Co.*,
61 F. Supp. 2d 563 (N.D. Tex. 1999) ............................................................ 35

*Mick v. Ravenswood Aluminum Corp.*,
178 F.R.D. 90 (S.D.W. Va. 1998) ................................................................. 47

*Nachman Corp. v. Pension Benefit Guar. Corp.*,
446 U.S. 359 (1980) ...................................................................................... 39

*Osberg v. Foot Locker, Inc.*,
138 F. Supp. 3d 517 (S.D.N.Y. 2015) ............................................... 34, 44, 45

*Osberg v. Foot Locker, Inc.*,
862 F.3d 198 (2d Cir. 2017) ...................................................................... 41, 45

*Pegram v. Herdrich*,
530 U.S. 211 (2000) ........................................................................... 7, 29, 30

*Peters v. Reliance Standard Life Ins. Co.*,
238 F.Supp.3d 905 (S.D. Tex. 2017) ............................................................ 48

*Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*,
721 F.3d 95 (2d Cir. 2013) ............................................................................ 11

*In re Principal U.S. Prop. Account ERISA Litig.*,
No. 4:10-CV-00198-JEG, 2013 WL 7218827 (S.D. Iowa Sept. 30,
2013) ............................................................................................................. 48

*Radford v. Gen. Dynamics Corp.*,
151 F.3d 396 (5th Cir. 1998) .................................................................... 16, 17

*Ranke v. Sanofi-Synthelabo Inc.*,
  436 F.3d 197 (3d Cir. 2006) ........................................................................ 17

*Rapp v. Henkel of Am.*,
  No. 3:18-CV-01656 (JCH), 2019 WL 4509095 (D. Conn. Sept. 18,
  2019) ............................................................................................................ 18

*Rhoades v. Casey*,
  196 F.3d 592 (5th Cir. 1999) ...................................................................... 51

*Rinehart v. Lehman Bros. Hold. Inc.*,
  817 F.3d 56 (2d Cir. 2016) .......................................................................... 36

*Ritchie v. U.S.*,
  451 F.3d 1019 (9th Cir. 2006) ....................................................................... 3

*Robinson v. Gen. Motors Co.*,
  No. 4:15-CV-158-Y, 2015 WL 13731154 (N.D. Tex. Oct. 21, 2015) ........ 48

*Ruessler v. Boilermaker-Blacksmith Nat'l Pension Tr. Bd. Of Trustees*,
  64 F.4th 951 (8th Cir. 2023) ........................................................................ 31

*Schaefer v. Ark. Med. Soc'y*,
  853 F.2d 1487 (8th Cir. 1988) ..................................................................... 24

*In re Southmark Corp.*,
  88 F.3d 311 (5th Cir. 1996) ............................................................................ 9

*Spencer v. Cent. States, Se. & Sw. Areas Pension Fund*,
  778 F. Supp. 985 (N.D. Ill. 1991) ............................................................... 47

*Sprague v. Gen. Motors Corp.*,
  133 F.3d 388 (6th Cir. 1998) ....................................................................... 47

*Swinney v. GMC*,
  46 F.3d 512 (6th Cir. 1995) .................................................................. 34, 35

*In re Target Corp. Sec. Litig.*,
  275 F. Supp. 3d 1063 (D. Minn. 2017) ........................................................ 34

*In re: Texas E&P Operating, Inc.*,
  No. 17-34386-SGJ-7, 2023 WL 3012268 (Bankr. N.D. Tex. Apr. 19,
  2023) ............................................................................................................ 10

*Tootle v. ARINC, Inc.*,
  222 F.R.D. 88 (D. Md. 2004) ....................................................................... 47

*Valley v. Rapides Parish Sch. Bd.*,
   118 F.3d 1047 (5th Cir. 1997) ....................................................................... 1

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996) ........................................................................... *passim*

*Vera v. Bush*,
   980 F.Supp. 254 (S.D. Tex. 1997) ................................................................ 9

*Vercellino v. Optum Insight, Inc.*,
   26 F.4th 464 (8th Cir. 2022) ................................................................ 34, 41

*Weber v. Gainey's Concrete Prod., Inc.*,
   No. 97-31267, 1998 WL 699047 ............................................................ 2, 3

*In re Wells Fargo ERISA 401(k) Litig.*,
   331 F. Supp. 3d 868 (D. Minn. 2018) ........................................................ 34

**Statutes**

28 U.S.C. § 2072(a) ......................................................................................... 11

28 U.S.C. § 2072(b) ......................................................................................... 11

29 U.S.C. § 1002(21) ......................................................................................... 6

29 U.S.C. § 1056(d)(1) ................................................................................... 50

29 U.S.C. § 1109(b) ........................................................................................... 6

29 U.S.C. § 1113 .................................................................................... *passim*

29 U.S.C. § 1113(1) ......................................................................................... 16

29 U.S.C. § 1113(2) ......................................................................................... 20

**Other Authorities**

26 C.F.R. § 1.414(g)–1(a)(2) ............................................................................. 8

## NATURE AND STAGE OF THE PROCEEDING

This certified class action, filed on April 13, 2016, seeks equitable reformation of a defined benefit pension plan, based on allegations that in 1989, Defendants misrepresented the terms of a plan amendment enacted that year. Following successful motions to dismiss both the original and first amended complaints, the Plaintiffs filed the operative Second Amended Complaint against the Defendants asserting a single claim seeking equitable relief to redress an alleged breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3).[1]

Trial began on June 20, 2023. Plaintiffs' case spanned 10 trial days,  and Plaintiffs rested on July 14, 2023. The Court should now enter judgment in favor of Defendants because, as set out below, (1) there are several issues on which Plaintiffs have been fully heard, (2) the Court must find in favor of Defendants on those issues, and (3) Plaintiffs cannot prevail without rulings in their favor on those issues.

## STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT

Fed. R. Civ. P. 52(c) provides that "[i]f a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Rule 52 "does not require that the district court set out [its] findings on all factual questions that arise in a case." *Valley v. Rapides Parish Sch. Bd.,* 118 F.3d 1047, 1054 (5th Cir. 1997). Instead, a

---

[1] Judge Hanen did not permit Defendants to move to dismiss the Second Amended Complaint. (ECF 78 at 9–10.)

court's "[f]indings [are sufficient to] satisfy Rule 52 if they afford the reviewing court a clear understanding of the factual basis for the trial court's decision." *Interfirst Bank of Abilene, N.A. v. Lull Mfg.,* 778 F.2d 228, 234 (5th Cir. 1985).

"A judgment on partial findings may be entered by the court 'at any time it can appropriately make a dispositive finding of fact on the evidence.'" *Weber v. Gainey's Concrete Prod., Inc.*, No. 97-31267, 1998 WL 699047, at *2 n.2 (quoting Fed. R. Civ. P. 52 advisory committee's note). In this case, the Court admitted testimony from each of the named Plaintiff class representatives, several of the putative class members, three witnesses—Ellen Collier, Karen Salinaro, and Paul McAuliffe—who addressed what BP America knew in 1989, and BP America's intentions in designing and adopting the RAP and in communicating its terms to participants, Defendants' 30(b)(6) witnesses, the former President of BP America, the former President of BP Alaska, the former Deputy Ombudsman, and Plaintiffs' expert, Lawrence Deutsch. In addition, the Court has admitted into evidence numerous documents including *inter alia*, the uniformly disseminated communication materials from 1989, the analysis BP America (aided by Kwasha Lipton) considered in 1988–89 as to the anticipated impact of the plan amendment, numerous SPDs, and several account balance statements for each of the named Plaintiff class representatives. Plaintiffs have been fully heard on the issues of what BP America knew, what BP America communicated to its employees (and when it did so), and what fiduciary conduct occurred.

"Unlike the standard applicable in judgments as a matter of law, when dismissing a case pursuant to Rule 52(c), a court is not required to make any special inferences or

review the facts in the light most favorable to the plaintiff." *Weber*, 1998 WL 699047 at

*2 n.2 (citing *Sanders v. General Servs. Admin.*, 707 F.2d 969, 971 (7th Cir. 1983)); *see*

*also Ritchie v. U.S.*, 451 F.3d 1019, 1023 n.7 (9th Cir. 2006) ("The Supreme Court has

held with respect to Rule 52(c)'s predecessor that the district court need not give the

nonmoving party any favorable inferences.")).

Under Rule 52(c), the Court should find in favor of Defendants on the following

issues:

1) There is no claim based on any alleged 1989 failure to satisfy ERISA's statutory disclosure requirements because that claim was dismissed by Judge Hanen in 2019 as barred by the statute of limitations as a matter of law;

2) Plaintiff's breach of fiduciary duty claim fails as a matter of law because they have failed to sue any 1989 fiduciary;

3) Plaintiffs' breach of fiduciary duty claim is barred by ERISA's statute of repose;

4) Plaintiffs' claim requires proof of a knowing or intentional misrepresentation, and there is no evidence of anyone—let alone either named Defendant— making any such misrepresentation;

5) Evidence Plaintiffs have introduced at trial prevents class-wide resolution of their claims; and

6) The sub-class's claims are barred by Plaintiff Fujimoto's release.

## ARGUMENT

## I.   There Are No Statutory Disclosure Claims At Issue.

In their proposed conclusions of law, Plaintiffs ask the Court to find that BP

Corporation North America violated ERISA by failing to provide an ERISA § 204(h)

notice "prior to January 1, 1989," and by "fail[ing] to provide participants with a SPD

[and/or SMM] regarding the 1989 plan amendment and restatement." (*See* ECF 428 at

¶¶ 13, 29–33.) Plaintiffs purport to seek equitable relief under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3) to redress those violations. (*Id.* at ¶ 61.)

As set out in Defendants' pretrial Memorandum of Law, claims regarding alleged failure to provide statutorily required disclosures in 1989 were dismissed from this case by Judge Hanen. (*See* ECF 423 at 18–19 (citing ECF 78 at 2 ("[G]iv[ing] the Plaintiffs the most generous calendar, th[o]se claims accrued in the 1988–90 time period. Thus, they were barred over twenty years ago.")).) The reasoning is simple; whatever disclosures were required to comply with applicable law in 1989 either were or were not made in 1989. A claim alleging they were not made, then, accrued in 1989, the time of the alleged failure. As Judge Hanen said when he dismissed the claim, "[i]t cannot be contested that each Plaintiff knew decades ago that they did not receive these notices/documents." (*Id.* at 6.)

The "law of the case" doctrine "'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case,'" absent extraordinary circumstances. *See Christianson v. Colt Indus. Oper. Corp.*, 486 U.S. 800, 815–17 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)); *see also United States ex rel. Guzder v. MKM Engineers, Inc.*, No. 05-895, 2010 WL 11595351, at *6, n.4 (S.D. Tex. Jan. 14, 2010). In their case, Plaintiffs failed to offer evidence of any reason at all, let alone "extraordinary circumstances" to disregard Judge Hanen's order. *In re Ford Motor Co.*, 591 F.3d 406, 411 (5th Cir. 2009) (law of the case applies when a case is transferred between judges; while not barred from reconsidering the first judge's order, a new judge should not do so "merely because the later judge

4

might have decided matters differently."). To the extent Plaintiffs base their claim for equitable relief on these alleged statutory disclosure violations, they have been fully heard on that issue, and the claims already have been dismissed as untimely. The Court should enter judgment in favor of Defendants on any claim based on violations of ERISA's statutory disclosure requirements at the time of the 1989 amendment.

## II.   Plaintiffs Cannot Recover For Fiduciary Breach Because They Failed To Sue The Fiduciary.

From the outset of this case, and on several occasions since, Defendants have asserted that Plaintiffs' breach of fiduciary duty claim as to the 1989 communications fails because they have not sued any 1989 fiduciaries. (*See* ECF 15 at 17–19; ECF 52 at 39–41; ECF 84 at 46; ECF 237 at 41 n.163; ECF 423 at 18.) Plaintiffs have only ever named two Defendants—the BP Retirement Accumulation Plan (the "Plan"), and BP Corporation North America, Inc. ("BPCNA").  Notwithstanding Defendants repeatedly pointing out this flaw, Plaintiffs not only failed to remedy this situation but made clear that they made a deliberate choice to proceed accordingly.

In their June 2016 response to Defendants' initial motion to dismiss, Plaintiffs argued:

> The Complaint alleged BP communicated to its employees that the conversion from the final average pay plan to the cash balance plan would result in retirement benefits that were as good or better than those an employee would receive under the final average pay plan, and that BP would bear any risk associated with the conversion. Similar actions in *Varity Corp. v. Howe*, were held to be conducted by the corporation as a plan administrator, and not as an employer . . . .

> In *Martinez v. Schlumberger, Ltd.*, the Fifth Circuit examined the holding of *Varity* and its evolution amongst other circuits. . . . The Fifth Circuit concluded " . . . that an employer, if it chooses to communicate about the future of a plan

> participant's plan benefits, has a fiduciary duty to refrain from misrepresentations." . . . Thus, naming BP as a party with respect to its breach of fiduciary duty was proper.

(ECF 21 at pp. 40-42). Similarly, in response to Defendant's motion to dismiss the First Amended Complaint, Plaintiffs' stated:

> Twenty-eight years ago, the BP Defendants ("BP") made a promise to career Sohio Heritage employees that changes it had made to its retirement plan would not reduce monetary pension benefits. . . . Congress required candor in employer communications to employees about future benefit accruals. It required employers and others who make promises to employees to honor those promises.

(ECF 55 at pp. 10, 12.)

Following Judge Hanen's grant of leave to file their Second Amended Complaint, the Plaintiffs again chose to name two Defendants—the Plan and BPCNA. As discussed below, their decision requires this Court to enter judgment in favor of the Defendants.

The text of ERISA establishes that neither named Defendant can be deemed a 1989 fiduciary. Initially, the Plan is not capable of meeting the statutory definition of fiduciary, and cannot be its own fiduciary. *See* 29 U.S.C. § 1002(21); *see also Acosta v. Pac. Enterprises*, 950 F.2d 611, 618 (9th Cir. 1991), *as amended on reh'g* (Jan. 23, 1992) ("[A] plan itself cannot be sued for breach of fiduciary duty."). Similarly, the undisputed evidence offered by Ms. Lexi Cargill, Defendants' 30(b)(6) witness, conclusively establishes that Defendant BPCNA did not exist in 1989. (Cargill Dep. 42:18–43:18, 44:14–16.) By operation of the statute, BPCNA cannot be liable for fiduciary conduct that occurred in 1989. *See* 29 U.S.C. § 1109(b) ("No fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary."); *see also Bannistor v.*

*Ullman*, 287 F.3d 394, 405 (5th Cir. 2002) (holding appellants cannot be liable for fiduciary breach that occurred when they had no fiduciary duty and assumed their duties long after loan at issue was implemented.).

Plaintiffs may argue—as they did at summary judgment (*see* ECF 251 at 45)—that BPCNA is the correct defendant, because they seek equitable reformation and it is the current plan sponsor. Plaintiffs' argument puts the cart before the horse. While BPCNA may be necessary to effectuate a remedy, Plaintiffs must first establish a breach of fiduciary duty occurred. To prove claim for breach of fiduciary duty under ERISA, Plaintiffs must show "(1) *Defendant was a plan fiduciary*; (2) Defendant breached its fiduciary duty; and (3) the breach resulted in harm to the plaintiff." *Grp. 1 Auto., Inc. v. Aetna Life Ins. Co.*, No. 4:20-CV-1290, 2020 WL 8299592, at *3 (S.D. Tex. Nov. 9, 2020) (citing *Kopp v. Klein*, 894 F.3d 214, 219 (5th Cir. 2018)) (emphasis added). This is because "[i]n every case charging breach of ERISA fiduciary duty . . . the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint[.]" *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). It is not sufficient for Plaintiffs to establish that BPCNA is the current plan sponsor; they must show they have sued a 1989 fiduciary.

The evidence is clear and unrefuted on what entities were involved in amending the plan in 1989, and communicating that amendment to employees at the time. The Plan Sponsor and employer of the class members was BP America, Inc. (DX 927.6 (defining

the "Company" as BP America Inc.); Tr. 6/21 AM at 36:23–24 (Plaintiff Fujimoto

acknowledging RAP statements came from BP America); Tr. 6/21 PM at 2-83:24–2-84:6

(Plaintiff Owen identifying his employer from 1987 to 1999 as BP America); Tr. 6/27 at

87:4–8 (Plaintiff Guenther reading excerpt from Long Brochure encouraging employees

"spend your full career with BP America"). The Plan Administrator (the sole named

fiduciary) was the Vice President of Human Resources for BP America Inc.[2] (*See* DX

927 at 6, 11.) The Ross letter (DX 6), the Short Brochure (DX 247), the slide presentation

(DX 20), and the Long Brochure (DX 257)—the uniform written communications that

form the basis for Plaintiffs' breach of fiduciary claim—are printed with BP America's

name and/or insignia affixed to them. The opening account balance letters each stated

"[o]n January 1, 1989 your *BP America* pension plan was revised . . . ." (*See, e.g.*, DX 6;

DX 77; PX 460 (emphasis added).) Plaintiffs' expert admitted that the Ross letter—

which announced the RAP amendment to employees and kicked off the communication

campaign—was sent on behalf of BP America. (Tr. 7/13 at 227:9–10,) Yet, Plaintiffs

elected not to name either BP America or its 1989 Vice President of Human Resources as

defendants in this action.

      Notwithstanding that Defendants repeatedly raised this concern since the inception

of the case in 2016, Plaintiffs have remained steadfast in their decision to sue only these

---

[2] While Plaintiffs have alleged, at various points, that, by referring to a job title rather than a specifically named person, the plan document did not properly designate a plan administrator. This is plainly wrong. The controlling regulation specifically provides that an administrator may be named by reference to the person or persons holding a named position or group of positions. *See* 26 C.F.R. § 1.414(g)–1(a)(2).

Defendants and have never made any attempt to bring additional defendants into this action. (*See* ECF 21 at 40–44; ECF 55 at 66–71; ECF 251 at 44–45.) Further, Plaintiffs have not presented any evidence or argument to this Court to establish a basis for naming the existing Defendants. Similarly, Plaintiffs have provided no evidence or explanation for not including BP America as a named defendant even though the company remains in existence today. As such, Plaintiffs claims must fail based on their failure to name the actual 1989 fiduciary as a named defendant.

Defendants assume the Plaintiffs may seek, or this Court may be inclined, to cure this failure by invoking Fed. R. Civ. P. 15 or 21. Additions of a party under Rules 15 and 21 are governed by the same standard. *See Vera v. Bush*, 980 F.Supp. 254, 255 (S.D. Tex. 1997) ("[T]he same standard applies for adding new parties under either Rule 15(a) or Rule 21."); *see also Martinez v. U.S. Postal Serv.*, No. CIV.A. B-06-186, 2007 WL 1468773, at *1 (S.D. Tex. May 18, 2007) ("The standard that is applied to an amendment that seeks to add new parties is the same under either Rule 15(a) or Rule 21."). In considering whether to permit addition of a party under either rule, a court may typically consider such factors as undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; undue prejudice to the opposing party by virtue of allowance of the amendment; and futility of amendment. *See In re Southmark Corp.*, 88 F.3d 311, 314 (5th Cir. 1996) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In this case, at a minimum, Plaintiffs have repeatedly failed to cure the deficiency through amendment, despite numerous

opportunities (including two amended complaints) over more than seven years of litigation in which to do so. Regardless, any such amendment is futile.

Under ERISA, it is too late to cure Plaintiffs' failure to sue the correct defendant. Although Fed. R. Civ. P. 15(c)(1)(C) provides for relation back to name a new party in certain circumstances (including some ability to correct a mistake as to the named defendant), it is inapplicable here. Because § 1113 is a statute of repose, any amendment to name a new defendant cannot relate back to the original filing. *See Fed. Deposit Ins. Corp. for Colonial Bank v. First Horizon Asset Sec. Inc.*, 291 F. Supp. 3d 364, 370 (S.D.N.Y. 2018) (holding statute of repose supersedes Rule 15(c)'s relation back provision because a statute of repose creates "an absolute bar on a defendant's temporal liability" with no exceptions) (quoting *Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc. ("CalPERS")*, 582 U.S. 497, 506 (2017)); *see also Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1248 (11th Cir. 2016) (quoting *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 783 (6th Cir. 2016)) (Rules Enabling Act requires construing procedural rules so as to avoid modifying rights conferred by statute of repose); *In re: Texas E&P Operating, Inc.*, No. 17-34386-SGJ-7, 2023 WL 3012268, at *12 (Bankr. N.D. Tex. Apr. 19, 2023) ("Because Rule 15 is a procedural rule, it cannot abrogate a statute of repose . . . when the time frame under the statute has expired.").

While Congress gave the Supreme Court "the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts," it provided that the Rules of Civil Procedure "shall not abridge, enlarge or modify any substantive right." *See* 28 U.S.C. § 2072(a), (b). The Rules Enabling Act,

therefore, "forbids any interpretation of Rule 15(c) that would 'abridge, enlarge or modify any substantive right,' and 'counsel[s] against adventurous application of' Rule 15(c), or indeed any federal rule." *JRS Partners, GP*, 615 F. Supp. At 766 (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999)); *see D & S Marine Transp., L.L.C. v. S & K Marine, L.L.C.*, No. CIV.A. 14-2048, 2015 WL 5838220, at *4 (E.D. La. Oct. 7, 2015) (citing *Miguel v. Country Finding Corp.*, 309 F.3d 1161, 1165 (9th Cir. 2002) (Rules Enabling Act prohibits application of Rules of Civil Procedure (including Rule 15(c)) to alter substantive rights, such as those created by statutes of repose).

A statute of repose represents "an absolute bar on a defendant's temporal liability." *De Vito v. Liquid Holdings Group, Inc.*, No. CV156969KMJBC, 2018 WL 6891832, at *24 (D.N.J. Dec. 31, 2018) (citing *CalPERS*, 137 S. Ct. at 2050), and creates a substantive right to that repose. *Dekalb Cnty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 414 (2d Cir. 2016), *as amended* (Apr. 29, 2016)("[*A*]*ll* statutes of repose create a substantive right."). As such, the Rules Enabling Act requires any interpretation of Rule 15's relation back provisions to avoid infringement on that substantive right. *See Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 109 (2d Cir. 2013). A decision to allow Plaintiffs to bring claims against a new party after the statute of repose has expired as to that party "would therefore necessarily enlarge or modify a substantive right and violate the Rules Enabling Act." *Id.* Under ERISA and the Rules Enabling Act, the Court's ability to exercise its discretion under Fed. R. Civ. P. 15 or Fed. R. Civ. P. 21 would be futile as a matter of law.

The Supreme Court has recognized that ERISA's remedial scheme, on the whole, was designed to represent the "careful balancing" of a prompt resolution of claims, with the public policy interest of encouraging employers to adopt and maintain voluntary employee benefit plans. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54(1987)). The Supreme Court has also held, with respect to a plaintiff's ability to pursue fiduciary breach claims under ERISA's remedial scheme, the § 1113 statute of repose effects "a legislative judgment that a defendant should be free from liability after the legislatively determined period of time." *Sulyma*, 140 S. Ct. at 774 (brackets omitted) (quoting *CalPERS*, 137 S. Ct. 2042, 2049 (2017)). Plaintiffs filed this suit more than seven years ago. ERISA's statute of repose is only six years. It would be contrary to the substantive right to repose, and the careful balancing act represented by ERISA's remedial scheme, to allow Plaintiffs to amend their complaint now to add or name a new defendant.

That BPCNA is the current plan sponsor does not alleviate the need for the Plaintiffs to name the 1989 fiduciaries as defendants.[3] Plaintiffs have not put forth any evidence that BPCNA *existed* in 1989, let alone that it had any fiduciary responsibility to the Plan or its participants in 1989. Instead, the record evidence establishes that twenty-

---

[3] That BP Corporation North America is the current plan sponsor is of "no consequence to fiduciary status." *In re BP p.l.c. Sec. Litig.*, No. 4:10-CV-4214, 2015 WL 6674576, at *4 (S.D. Tex. Oct. 30, 2015) (quoting *In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861, 867 (S.D. Tex. 2004) (dismissing BP Corporation North America from action alleging fiduciary breach under ERISA in part because, though it was the plan sponsor named in the plan documents, "a 'company cannot be subject to fiduciary liability simply by virtue of its role as a plan sponsor'").

one years later, in 2011, BPCNA (by then the plan sponsor) reviewed the concerns about the 1989 RAP communications issued by BP America. BPCNA concluded that the communications, did not make any "promise of what actual benefits under the plan ultimately would be." *See* DX 9. Thus, BPCNA determined, in 2011, that the 1989 communications by the 1989 fiduciary were not a breach of any duty.

Ultimately, while Plaintiffs have chosen to generically use the term "BP" throughout this lawsuit, it cannot be a catchall for all BP-affiliated corporate entities that have existed over the course of the last 34 years. As the record evidence demonstrates, BP America, Inc. was incorporated in 1974, and acquired all of the outstanding shares of common stock of Standard Oil of Ohio ("Sohio") on June 23, 1987. (ECF 419 at 15, Stipulated Facts ¶¶ 1–2.). Similarly, several other legacy companies—such as Kennecott and Old Ben Coal Company—were also part of the BP America umbrella of companies in the late 80's. (*See* McAuliffe Dep. at 15:23–16:25, 24:7–23.) Fast forwarding ten (10) years later, the testimony/evidence reveals that wholly separate companies such as Amoco Corporation, Atlantic Richfield Corporation and Castrol were acquired well after the plan amendment at issue in this case. (Cargill Dep. 39:17–40:22 (discussing merger with Amoco and subsequent acquisition of ARCO; DX 9 (describing BP as an "amalgamation of many different companies"; mentioning Castol, Amoco, and ARCO); Tr. 6/21 PM at 2-10:16–23 (Plaintiff Owen describing timing of Amoco merger); Tr. 6/26 at 56:23–57:6 (Plaintiff Guenther describing Heritage Amoco and ARCO co-workers).)

This case is about a point in time—1989. Indeed, the Contested Issues of Fact *Plaintiffs* identified for the Court in the Joint Pretrial Order include "[w]hether BP

America Inc. was acting as a fiduciary during the 1989 communications campaign," and

"[w]hether BP breached a fiduciary duty it owed participants during the 1989

communication campaign." (ECF 419 at 17, Contested Issues of Fact ¶¶ 1, 7.) Plaintiffs

have failed to provide this Court with the requisite evidence to hold the named

Defendants—as opposed to an amorphous "BP"—responsible for the alleged breach of

fiduciary duty of which they complain.[4]

> In recent argument to the Court, Plaintiffs' counsel stated:
>
> But, really, what it comes down to -- and this is my golden rule. If you're going to talk to an employee, you're wearing your fiduciary hat if you're telling them about plan benefits. There are exceptions out there. And don't get me wrong. I recognize there's exceptions out there. But when you start communicating to that employee what their benefit is when you're beyond plan design, you're doing a fiduciary responsibility. You're no longer designing a plan and deciding what the benefit would be. . . .
>
> BP wears both hats, and I think you need this in front of you to decide which hat they're wearing and what they know, even when they're wearing each hat. You can be wearing a plan sponsor hat and know things. That's what happened in *Amara*. You can know things while you're wearing your plan sponsor hat and then have communication issues afterwards when you switch over to your fiduciary -- your functional fiduciary hat.

(Tr. 7/12 at 204:12–20; 209:6–14.) Under Plaintiffs' golden rule, *BP America*—who was

the employer and plan sponsor in 1989—should have been named in this matter as a

---

[4] There can be no suggestion that BPCNA had an obligation to invoke Rule 19 in an attempt to affirmatively join BP America as a defendant. As set out herein, ERISA's statute of repose creates a substantive right not to face liability after the period proscribed by Congress. BPCNA has asserted throughout this case that period ran as to the claim asserted before this case would be filed. Therefore, it would have been inconsistent with Rule 11(b) for BPCNA to represent to the Court that joinder of BP America was appropriate at any stage.

party defendant. Yet, Plaintiffs made a deliberate decision not to do so, and never sought to amend that decision. It is fatal to their claim.

If the Court concludes that it has the discretion to remedy this very serious problem by allowing a new defendant to be joined, Defendants respectfully request a mistrial be declared. The most common ground for a mistrial is that an error has occurred that cannot be cured by any remedial action of the parties or the court. The Defendants submit that allowing such a drastic change of circumstances during trial would result in undue prejudice. If BP America is added as a named Defendant, it will not have had any opportunity to answer the Complaint, assert any unique defenses it may have, develop evidence on its behalf, etc. The addition of a Defendant during trial will unavoidably prejudice defense of this action, and present due process issues as the Court attempts to discharge its role as both finder of fact and adjudicator.

## III.    Plaintiffs' Fiduciary Breach Claim is Untimely Under 29 U.S.C. § 1113.

Plaintiffs' only live claim seeks equitable relief based on an allegation that Defendants breached ERISA's duty of loyalty in communicating the terms of the 1989 RAP amendment. (*See* ECF 428 at ¶¶ 48–55.) Specifically, Plaintiffs allege that Defendants undertook a fiduciary act (communicating to participants about the terms of their benefits) in a manner that placed the interests of the company above those of participants by "failing to provide complete and accurate written explanations of the benefits available to RAP participants." (*Id.* at ¶¶ 52–54.) As they did at summary judgment (*see* ECF 251 at 45 & n.174), Plaintiffs point to the Supreme Court's opinion in

15

*Varity Corp. v. Howe*, 516 U.S. 489 (1996), as recognizing the claim they assert here. (*See* ECF 428 at ¶ 49.) This, despite the fact that no Defendant undertook any such acts.

The Fifth Circuit has explicitly held that, where they are based on allegations that a defendant breached ERISA's fiduciary duties, claims seeking equitable relief under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), are governed by ERISA's limitations provision, ERISA § 413, 29 U.S.C. § 1113. *Radford v. Gen. Dynamics Corp.*, 151 F.3d 396, 399 (5th Cir. 1998) ("The plain language of § 413 of ERISA indicates that its statute of limitations would apply to a *Varity* claim pursuant to § 502(a)(3)."). Plaintiffs' attempts to invoke other limitations provisions—whether under Texas state law or federal common law—contradict binding precedent in *Radford*, and must be rejected.

> a.  *Plaintiffs' claim is subject to—and barred by—ERISA's statute of repose.*

Under § 1113, an ERISA breach of fiduciary duty claim "must be filed within one of three time periods, each with different triggering events." *Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 774 (2020). "The first begins when the breach occurs." *Id.*; *see also* 29 U.S.C. § 1113(1). This period is a statute of repose, effecting "a legislative judgment that a defendant should be free from liability after the legislatively determined period of time." *Sulyma*, 140 S. Ct. at 774 (brackets omitted) (quoting *CalPERS*, 137 S. Ct. 2042, 2049 (2017)).

The alleged misrepresentations at issue in this case are contained in the uniformly disseminated communications from the 1989 "Communications Campaign." Even if Defendants engaged in the acts being mentioned, the breach, if any, occurred in 1989. ERISA's statute of repose, then, "establish[ed] an outside limit of six years in which to

16

file suit . . . [,]" running from the date of the breach, not the date of discovery. *See Radford*, 151 F.3d at 400 (measuring six-year period from last date of violation, without regard to when plaintiff discovered alleged violation); *see Gosselink v. Am. Tel. & Tel., Inc.*, No. CIV.A. H-97-3854, 1999 WL 33737341, at *11 (S.D. Tex. Aug. 4, 1999) (ERISA's statute of repose runs six years from date of violation; rejecting argument that period can be tolled by allegation of on-going breach). ERISA's statute of repose reflects a legislative judgment to protect plan fiduciaries from lingering liability, *see Sulyma*, 140 S. Ct. at 774 (quoting *CalPERS*, 137 S. Ct. 2042), and "abolishes the cause of action" if not timely brought. *Burlington N. & Santa Fe Ry. Co. v. Skinner Tank Co.*, 419 F.3d 355, 363 (5th Cir. 2005) (citing *Servicios-Expoarma, C.A. v. Indus. Mar. Carriers*, 135 F.3d 984, 989 (5th Cir. 1998)).

Plaintiffs' claims are barred, because their claims are subject to ERISA's six-year statute of repose, and were not brought within six years of the alleged fiduciary breach. Plaintiffs challenge fiduciary conduct that occurred in 1989. (*See generally* ECF 82 (alleging that BP Corporation North America Inc. misrepresented the RAP through written materials and in-person meetings in 1989); ECF 427 at ¶¶ 80–82, 89–93; 95 (describing communication campaign as including Ross Letter, Short Brochure, employee meeting slides and script, and Long Brochure); DX. 39 (Guenther Opening Account Balance letter); DX 77 (Fujimoto Opening Account Balance letter; PX 460 (Owen Opening Account Balance letter).) The last action constituting part of the alleged breach occurred in 1989. *See Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 202–03 (3d Cir. 2006) (finding that, in an ERISA breach of fiduciary case for purported

misrepresentations, the limitations ran as of the date of the misrepresentation); *Cf. Rapp v. Henkel of Am.*, No. 3:18-CV-01656 (JCH), 2019 WL 4509095, at *5 (D. Conn. Sept. 18, 2019) (quoting *Novella v. Westchester County*, 661 F.3d 128, 146 (2d Cir. 2011) (declining to allow a continuing violation theory when "plaintiff's claim are based on a single decision that results in lasting negative effects."). Plaintiffs filed suit 21 years too late.

Throughout this case, and in their pretrial submissions, Plaintiffs suggest that the six-year time period to initiate this suit did not start until September 2014, when BP Corporation North America Inc. told them it was not going to amend the RAP again to enhance their benefit. (*See* ECF 419 at 10.) But—as with any settlor function (*i.e.*, establishing, amending, or terminating a plan)—BP Corporation North America's decision not to amend the RAP in response to employee concerns was not fiduciary conduct. Thus, it has no bearing on the time Plaintiffs had to bring this claim. *See Klaas v. Allstate Ins. Co.*, 21 F.4th 759, 773 (11th Cir. 2021).

While the Ombudsman process (and earlier employee fairness complaints leading to BP Corporation North America's 2011 decision and the Dorazil letter) did present an *opportunity* for BP Corporation North America to enhance RAP benefits for Heritage Sohio employees, BP Corporation North America was under no fiduciary obligation to do so. The suggestion that it could have done so has nothing to do with curing fiduciary breaches.

Plaintiffs likewise are wrong to suggest that they could not seek "redress" under 29 U.S.C. § 1132(a)(3) for alleged fiduciary breaches until the exact amount of their

alleged loss was known. If their claims had any merit, the statute would have permitted them, in 1989, to sue to "enjoin" violations of ERISA and to obtain other appropriate equitable relief, including the very reformation claim they now bring. All of Plaintiffs' claims accrued in 1989 and they are now time barred.

The court's analysis in *Klaas v. Allstate Insurance Co.*, is instructive.[5] There, in 2013, Allstate amended its benefit plan and communicated to participants that it would cease paying life insurance premiums for employees who retired since 1990. *Id.* at 765. Plan participants sued Allstate for representing that they would retain no-cost life insurance coverage until their death. *Id.* at 765–66. The court ruled for Allstate, finding Plaintiffs' claims were barred by ERISA's statute of repose. *Id.* at 771–73. While some participants pointed to written and oral communications going back to the 1980s supposedly promising lifetime coverage, the Court found that the most recent alleged representation was made in 2006, and the claim—which was not filed until 2013—was untimely. *Id.* at 772. Here, the *last* misrepresentation alleged by Plaintiffs was in 1989, and the statute of repose ran six years later.

Plaintiffs had until 1995 to sue. Plaintiffs filed suit April 13, 2016, 21 years too late.

---

[5] *Klaas v. Allstate Ins. Co.*, 21 F.4th 759 (11th Cir. 2021), *cert. denied*, 214 L. Ed. 2d 78, 143 S. Ct. 233 (2022), *and cert. denied sub nom. Turner v. Allstate Ins. Co.*, 214 L. Ed. 2d 14, 143 S. Ct. 85 (2022).

> b. *Plaintiffs' "actual knowledge" of the claim asserted does not extend their time to file suit.*

Turning back to the text of § 1113, "[t]he second period, which accelerates the filing deadline, begins when the plaintiff gains 'actual knowledge' of the breach." *Sulyma*, 140 S. Ct. at 774; *see also* 29 U.S.C. § 1113(2). The plaintiff must file suit "within three years of 'the earliest date on which the plaintiff had actual knowledge of the breach or violation.'" *Sulyma*, 140 S. Ct. at 774 (quoting 29 U.S.C. § 1113(2)). Notably, this does not require—as Plaintiffs seem to suggest—knowledge of the exact amount of harm claimed, or of the specific cause of action to be asserted. This statute of limitations "encourage[s] plaintiffs to pursue diligent prosecution of known claims." *Id.* (quoting *California Pub. Employees' Ret. Sys.*, 137 S. Ct. at 2049).

In their proposed conclusions of law, Plaintiffs suggest that their claim is timely, absent evidence they had actual knowledge of it more than three years before filing suit. (*See* ECF 428 at ¶¶ 107–08.) But, by the text of the statute, § 1113(2) applies to *shorten* the six year period to file suit within ERISA's statute of repose; it does not provide a separate window to sue after a plaintiff obtains "actual knowledge" of his claim. *See* 29 U.S.C. § 1113 (providing claims may be initiated within the *earlier* of six years after the alleged breach, or three years of the date plaintiff had actual knowledge). Thus, Plaintiffs cannot manufacture a timely claim by claiming ignorance of the facts until April 2013.

*Klaas* is again instructive. There, the court rejected Plaintiffs' claims that they could not have known of any alleged misrepresentation—such that their claims did not accrue—until Allstate's 2013 letter announcing the termination of their benefit. *Klaas*, 21

20

F.4th at 773. The Court rejected this argument because the decision reflected in that 2013 letter (i.e., the termination of a benefit) was a non-fiduciary, settlor action. *Id.* As such, the date of that announcement could not give rise to a timely claim for breach of fiduciary duty. *Id.*

The same result should follow here. Both Rick Dorazil's 2011 communication (DX 9), and John Minge's 2014 letter (PX 169), communicated that BP had decided not to amend the RAP to enhance benefits for heritage Sohio participants. Under the law, a decision not to amend a pension plan is not a fiduciary act; it is a plan sponsor, settlor act to which fiduciary responsibility does not attach. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999) ("ERISA's fiduciary duty requirement simply is not implicated where [a Plan's settlor] makes a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated."); *Lockheed Corp. v. Spink*, 517 U.S. 882, 891 (1996) (internal citation omitted) ("the act of amending a pension plan does not trigger ERISA's fiduciary provisions"); *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003) (internal citation omitted) ("Because ERISA's functional definition of a fiduciary does not include designing a plan, fiduciary duties do not attach to an employer when it acts in this capacity."); *Corcoran v. Bell Atlantic Corp.*, 159 F.3d 1350 (3d Cir. 1998) (holding the selection of interest mortality assumptions in connection with cash balance formula was "a design function and nonfiduciary in light of *Lockheed*.").  These letters cannot be the basis for the claim Plaintiffs are asserting, and they are irrelevant in determining whether Plaintiffs' claims were timely.

In fact, to the extent actual knowledge is considered, the evidence establishes that the class representatives had actual knowledge of their claims more than three years before filing suit. Mr. Fujimoto testified that he was aware, throughout his employment, that changes in interest rates would affect his benefits under the RAP, that lower rates would mean his benefit grew less, and that he was aware interest rates varied over time. (Tr. 6/21/2023 at 35:4–12.) He also testified that he received and read statements about his account throughout his employment. (Tr. 6/21/2023 at 35:13–37:10.)

Mr. Owen testified that he understood the final average pay formula was going away as a result of the 1989 amendment, and that his benefit was going to be calculated under the cash balance formula. (Tr. 6/21/2023 at 68:13–21; 70:2–6 ; 70:16–22; 2-21:14–2-22:6.) He also testified to checking the math on his RAP statements on an ongoing basis, and to having run comparison calculations using formulas provided by Amoco and ARCO heritage employees in 2003 or 2004, and developing at least a suspicion that his RAP benefit was going to be lower than his ARP benefit. (Tr. 6/21/2023 at 2-5:16–2-10:12; 2-28:2–22.)

Mr. Guenther testified that he tracked the continued growth in his RAP account on a monthly basis for at least 20 years before filing suit, received several estimates of his benefit under the Plan, and admitted to making numerous complaints to BP in 2011 and 2012—each more than three years before this suit was filed. (Tr. 6/27/2023 at 17:7–18:2; 23:1–23:3; 46:18–50:9; 97:3–99:21.)

Statutes of limitation and repose exist to provide certainty to those taking actions subject to a statutory scheme and provide closure to the parties involved. Enforcing the

statute of limitations and repose here is entirely consistent with ERISA's text and Congress' stated intent to encourage employers to provide benefits to employees and ensure consistent standards. *See Varity Corp.*, 516 U.S. at 497 (in enacting ERISA, Congress "desire[d] not to create a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefit plans in the first place").

Because Plaintiffs filed suit in 2016 regarding fiduciary conduct that occurred in 1989, it is ultimately irrelevant when Plaintiffs had actual knowledge of their claim, because ERISA's six-year statute of repose expired in 1995, whether or not Plaintiffs had knowledge of their claims. Still, if their actual knowledge is considered, it is clear Plaintiffs each had knowledge of their claim more than three years before they brought suit.

### c. There is no evidence of fraud or concealment.

The third period specified under § 1113—and the only one that provides for any extension beyond six years from the alleged breach—only "applies 'in the case of fraud or concealment.'" *Sulyma*, 140 S. Ct. at 774 (quoting 29 U.S.C. § 1113). The period "begins when the plaintiff discovers the alleged breach," and Plaintiff must file the action within six years of "the date of discovery." *Id.* (quoting 29 U.S.C. § 1113).

The fraud or concealment exception to ERISA's statute of repose, however, requires Plaintiffs to show "(1) that defendants engaged in a course of conduct designed to conceal evidence of their alleged wrongdoing and that (2) [Plaintiffs] were not on actual or constructive notice of that evidence, despite (3) their exercise of due diligence."

23

*Schaefer v. Ark. Med. Soc'y*, 853 F.2d 1487, 1491–92 (8th Cir. 1988); *see also Chavez v. Sumner*, No. 10-0313, 2012 WL 13059711, at *3 (S.D. Tex. 2012), *R&R adopted at* 2012 WL 13059726 (S.D. Tex. 2012) (courts require "affirmative conduct designed to conceal a breach" for the fraud or concealment exception to apply); *Gosselink v. Am. Tel. & Tel., Inc.*, No. 97-3854, 1999 WL 33737341, at *11–13 (S.D. Tex. 1999) (a plaintiff must establish "affirmative steps to conceal any alleged fiduciary breaches").

Even if Plaintiffs were able to establish that these Defendants concealed facts about the RAP in 1989, no good faith basis exists to contend their claims are timely. Plaintiffs' Second Amended Complaint does not allege any fraudulent statement or act of concealment after 1989 and concedes that "a proper SPD would have informed employees of the risk of future pension shortfalls." (ECF No. 82 at ¶ 46.) To have been timely brought in April 2016, Plaintiffs would need to be able to show not just that BP Corporation North America misrepresented the terms of the RAP in 1989 (which it could not because it did not exist), but also that it subsequently took affirmative steps for twenty-one years—until at least April 2010—to prevent Plaintiffs from discovering the true impact of the 1989 amendment. There is no evidence of any such cover-up.

Instead, the evidence demonstrates that, in 1991 (and on many subsequent occasions), BP America issued an SPD, which described the RAP formula and provided an example of "How Your Benefit Grows," with the following specific disclaimer: "Keep in mind, this example is based on certain assumptions about the future. Your actual account balance will depend on actual changes in interest rates, the Social Security wage base and your eligible compensation." (See DX 19.8.) There is no claim in the case that

24

the 1991 SPD—or any subsequently issued SPD—misrepresented the terms of the RAP, or somehow perpetuated the alleged "promise" of equal or greater benefits. Mr. Deutsch acknowledged that, outside of the grandfathered population, none of the SPDs issued in 1991 or after made any reference to comparing benefits to the ARP when determining benefits under the RAP. (Tr. 7/13 at 201:25–202:13, 203:8–12.) Instead, the SPDs fairly and accurately described what the RAP formula provides. The SPDs cannot be said to have "promised" anything more.

In addition, all participants received RAP account statements from the RAP's fiduciaries showing their account balances and the interest rates used in determining pension accruals each year. Plaintiffs Fujimoto, Guenther, and Owen (as well as potential class member Sarah Fujimoto) each testified that they received those statements. (Tr. 6/21/2023 at 35:20–37:10; 40:11–41:19; Tr. 6/27/2023 at 108:13–111:11; Tr. 6/21/2023 at 2-22:7–10; 2-65:7–2-73:20); Tr. 6/20/2023 at 93:4–14.) Many exemplars are in evidence. (DX 40; DX 78; DX 79; DX 259; DX 260; DX 261; DX 262; DX 263; DX 264; DX 265; DX 266; DX 267; DX 268; DX 270.)

The evidence presented to date establishes that the 1989 communications were wholly consistent with BP America's and the then-RAP fiduciaries' knowledge and intent in 1989, and were supported by detailed analysis performed by an expert actuarial firm retained for that specific purpose. Participants received detailed information about how the amended formula would work, explicit disclosure of the assumptions used in the example calculations provided during the rollout, and affirmative language stating that their actual benefit entitlement would be the product of the new formula, as influenced by

25

actual interest rates, changes in actual compensation, age at retirement, and the payment form the participant elected (among other things). There is nothing to support a claim that BP America knowingly or intentionally misrepresented the terms of the amendment in 1989, let alone that BP Corporation North America (the Defendant here) did so. More to the point, however, even if there were some misrepresentation in 1989, Plaintiffs failed to offer any evidence establishing affirmative steps taken to conceal any misrepresentation made in 1989.

Rather, the evidence and testimony demonstrates that, once the RAP amendment was made, the RAP fiduciaries repeatedly and systematically communicated to participants—including Plaintiffs—that their benefits were to be determined solely with reference to the RAP formula, without any comparison to the prior pension or pension formula. This evidence of repeated disclosures made to participants in the decades following 1989[6] defeats any claim of fraudulent concealment. *See Adams v. The Brink's Co.*, 420 F. Supp. 2d 523, 553 (W.D. Va. 2006), *aff'd sub nom. Adams v. Brink's Co.*, 261 F. App'x 583 (4th Cir. 2008) ("Fraud or concealment" exception to ERISA's six-year statute of limitations did not apply to breach of fiduciary duty claims because, after alleged misrepresentations regarding benefit calculations under post-merger pension plan, employees received accurate information, even if they failed to read it); *see also Klaas,*

---

[6] Plaintiffs also introduced a 1999 document that affirmatively stated that, for employees who stayed at a company their entire career, a final average pay plan was typically preferable to a cash balance plan. (*See* PX 214.) This statement, along with the affirmative descriptions of benefits in SPDs and account statements, is wholly inconsistent with the claim that any BP entity affirmatively concealed the impact of the RAP amendment from participants.

21 F.4th at 773 (accurate description of at-issue benefit in 2007 SPD corrected any misrepresentation in alleged inaccurate 2006 communication, such that limitations expired six years from SPD and claim was untimely when brought).

Plaintiffs had accurate information about how the RAP worked in 1989. However, even if a misrepresentation occurred then, the Plaintiffs have never made any claim that any of the RAP SPDs (including the one distributed in 1991) misled them about the benefit they would receive. Plaintiffs received periodic account statements every year from the RAP fiduciaries, and—beginning with a move to an on-line benefits system in 2000—had real-time information about the growth of their benefit. There is no basis to find BP Corporation North America, nor any other entity, was engaged in fraud or concealment of a breach of fiduciary duty alleged to have occurred in 1989, and (as such) no basis to provide Plaintiffs relief from ERISA's statute of repose.

> ### d.   ERISA's statute of repose is not subject to equitable tolling.

In an apparent attempt to avoid the application of ERISA's statute of repose, in both their proposed conclusions of law (ECF 428 at ¶¶ 115–16) and memorandum of law (ECF 429 at 24–25), Plaintiffs assert that *Holmberg v. Armbrecht*, 327 U.S. 392 (1946) counsels in favor of finding any limitations period in this action is subject to the equitable doctrine of laches. *Holmberg* itself defeats Plaintiffs' argument. There, the Court held that "[i]f Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitation is definitive." *Id* at 395. Because, as discussed above, the Fifth Circuit has held that a *Varity* claim—like the one asserted here—asserts a breach of fiduciary duty and is subject to

27

ERISA's statute of repose, "there is an end of the matter." That statute of repose, and not the doctrine of laches, governs Plaintiffs claims.

Further, while Plaintiffs describe *Holmberg*, as the opinion does, as basing its rule on the doctrine of laches, the case in fact discusses the doctrine of equitable tolling. *See U.S. ex rel Erskine v. Baker*, 213 F.3d 638 at n.4 (5th Cir. 2000) (*Holmberg* "stated that the doctrine of equitable tolling . . . 'is read into every federal statute of limitations,'" but is inapplicable where Congress has accounted for that doctrine by writing protecting against fraud into the limitations provision). Subsequent Supreme Court precedent clarified that equitable tolling does not apply to statutes of repose—including ERISA's. *See California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 507 (2017) (where Congress has evinced legislative intent by enacting statute of repose, courts are powerless to disturb that through equitable tolling).

Regardless, even if *Holmberg* could apply—and it cannot—it would not eliminate any limitations provision, as Plaintiffs suggest. Instead, where *Holmberg* applies, the rule says "where a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered." *See Holmberg*, 327 U.S. at 397. In that regard, it operates much the same way as the "fraud or concealment" exception contained in ERISA. Plaintiffs' cannot maintain a timely claim by stating they did not read the numerous disclosures the RAP fiduciaries sent describing RAP benefits after 1989.

28

**IV.     The Evidence Does Not Establish A Knowing or Intentional Misrepresentation.**

*a.  Plaintiffs Have Not Met Their Burden of Proof.*

Plaintiffs have characterized their sole remaining claim as one arising under *Varity Corp. v. Howe*, 516 U.S. 489 (1996),[7] in which the Court said that 29 U.S.C. § 1132(a)(3) allows a claim for equitable relief based on certain types of misleading fiduciary statements about employee benefits. *See Varity*, 516 U.S. at 515 (affirming decision that plaintiffs' claims arose under § 502(a)(3)). There are two broad requirements of a *Varity* claim: fiduciary conduct and intentionally and affirmatively misrepresenting details of benefits to employees. *See id.*

As for the first element of a *Varity* claim, the Supreme Court has explained that not every action taken by an ERISA fiduciary is undertaken in a fiduciary capacity. *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). In the context of an ERISA plan, it is completely appropriate for an employer to act in furtherance of its business interests when undertaking actions in a non-fiduciary capacity. *Id.* (using the example that an employer does not breach fiduciary duties by modifying the terms of a plan, even if the modification provides "less generous benefits"). Fiduciary duties include: (i) proper management, administration, and investment of plan assets; (ii) maintenance of proper records; (iii) the disclosure of specific information; and (iv) the avoidance of conflicts of interest. *Schied v. Dynegy, Inc. (In re Dynegy, Inc. ERISA Litig.)*, 309 F. Supp. 2d 861, 871–72 (S.D. Tex. 2004) (quoting *Laborers National Pension Fund v. Northern Trust*

---

[7] ECF 251 at 45 & n.174.

*Quantitative Advisors, Inc.*, 173 F.3d 313, 317 (5th Cir.)). Thus "[i]In every case charging breach of ERISA fiduciary duty, then, the threshold question is . . . whether [a] person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram*, 530 U.S. at 226.

As to the second element of a *Varity* claim, in considering whether a fiduciary has breached its fiduciary duty by making knowingly misleading communications to participants, courts have identified three ways in which such a breach occurs: (1) where a participant asks a plan provider about their benefits and receives a misleading or inaccurate answer, (2) a plan provider on its own initiative provides misleading or inaccurate information about the future of the plan, or (3) ERISA or its implementing regulations required the employer to make a disclosure and the employer failed to do so. *See Haviland v. Metro. Life Ins. Co.*, 730 F.3d 563, 572 (6th Cir. 2013). As discussed above, the first and third of these situations are not at issue in this case.

What's left is the second type of statement. Importantly, in certifying this case to proceed as a class action, the Court characterized the claims at issue as turning on communications prepared by BP America and the RAP fiduciaries and "*uniformly disseminated* to all Sohio heritage plan participants." (ECF 267 at 12; *see also id.* at 14 (Plaintiffs' claims are based on "oral and written uniformly disseminated communications"), 20 ("[T]he harm alleged here flows from company-wide representations made to Sohio heritage plan participants.").) Thus, Plaintiffs must show that uniformly disseminated communications provided knowingly misleading or knowingly inaccurate information to participants about the future of their plan.

30

Throughout this lawsuit, and at trial, Plaintiffs have attempted to meet their burden by pointing to isolated statements contained in various of the 1989 communications, and characterized them, without any context, as a promise that the RAP would pay benefits to all participants "as good or better" than what they would have received under the RAP. The uniformly distributed communications introduced in this case contained no such promise, and neither the class representatives nor the putative class members were able to point to any such statement during their testimony. Further, the law does not support Plaintiffs' attempts to challenge individual sentences as amounting to fiduciary breach. Instead, courts look to the totality of the circumstances, and evaluate a fiduciary's communications based on the context in which they were made. *See Ruessler v. Boilermaker-Blacksmith Nat'l Pension Tr. Bd. Of Trustees*, 64 F.4th 951, 962 (8th Cir. 2023) (finding no fiduciary breach because, although certain plan communication omitted material information, that information was contained in other documents sent to participants).

While Plaintiffs contend that certain, isolated statements left them with the *impression* that benefits could never be lower under the RAP than they would have been under the ARP—or that they were, to use Mr. Guenther's words, "good to go" (Tr. 6/26/2023 at 44:20–45:2; Tr. 6/27/23 at 100:9–101:1)—the actual information presented in the uniformly disseminated communications flatly contradicts that conclusion. As the Court has seen, BP America and the RAP fiduciaries showed employees at the rollout meetings a chart demonstrating that a RAP plan participant could receive less benefits under the RAP than the ARP. (DX 236 at 64.)

31

As each plaintiff admitted, the materials issued in 1989 made clear that the RAP "grandfathered" only those over age 50. (Tr. 6/21 AM at 27:8–19, 78:21–79:12; Tr. 6/21 PM at 2-30:22–2-31:9, 2-37:20–2-38:9; Tr. 6/27 at 69:14–23.) That is, that it guaranteed only to those aged 50 and older that they would get the higher of the old and new benefit formulas on retirement. The necessary implication of this is that those under 50 had no such assurance.

Were that not clear enough, the FAQ section of the Long Brochure stated:

> 20. Certain employees receive a higher level of service credits, depending on their age and service. What is the purpose of this?
>
> Under the Retirement Accumulation Plan, certain employees — particularly those in mid-career with shorter periods of service — could receive a lower benefit than they would have under the prior benefit formula. Therefore, the higher level of service credit — which is based on a combination of age and service — is designed to ensure a fair transition from the prior benefit formula to the new formula under the Retirement Accumulation Plan. Everyone employed by the Company on January 1, 1989 is eligible for this provision.

(DX 6 at 20 (highlighting added).) The Long Brochure also told employees they would each soon receive an individualized Opening Account statement. Those statements illustrated how the RAP formula worked, and how benefits might grow over time, based on certain assumptions. Significantly, the letter included the following language explicitly advising that benefits were variable and based on a number of factors:

**A Note About This Statement**

The numbers in the projection charts on this statement are for *illustrative purposes only* and are not a promise that your opening and current accounts will increase accordingly in the future. The official plan documents, your actual pay, your age at retirement, the Social Security wage base, the level of future interest rates and the payment option you select when you retire will determine your benefit under the Retirement Accumulation Plan. Furthermore, all provisions of the BP America Retirement Accumulation Plan are subject to approval by the Internal Revenue Service.

(*See, e.g.,* DX 39 at 2.)

Likewise, the evidence contradicts the Plaintiffs assertion that the 1989

communications "promoted the RAP only in a positive light."[8] BP America and the RAP

fiduciaries told participants that (1) there was a possibility some participants could

receive lower benefits under the RAP than they would have under the ARP, (2) the

projections provided in the communications materials were for "*illustrative purposes*

*only*" (*i.e.*, a demonstration of how the new formula worked, not any kind of promise),

and (3) a participant's benefit under the RAP would ultimately be impacted by his or her

actual pay, age at retirement, Social Security wage base, level of future interest rates, and

the payment option selected at retirement.

Viewed in its entirety, the package of communications the RAP fiduciaries issued

precludes any finding that the 1989 RAP administrator or BP America, let alone BP

Corporation North America, misrepresented the RAP in 1989, or somehow left Plaintiffs

with the impression that their RAP benefits could never be lower than their ARP benefits.

Instead, the evidence shows that the RAP fiduciaries carefully and meticulously

communicated accurate and truthful descriptions of the plan change, based on what they

---

[8] ECF 419 at 7.

knew at the time, and provided accurate snapshot examples of how the new formula worked. That there were some elements of the communication campaign that did not contain all of the details of the new formula is irrelevant—the campaign as a whole gave participants an accurate and complete description of all material elements of the RAP.

A fiduciary has a duty to speak truthfully and refrain from misrepresentations. *Vercellino v. Optum Insight, Inc.*, 26 F.4th 464, 469 (8th Cir. 2022) (no violation of fiduciary duty when information the beneficiary said ought to have been disclosed was in the plan documents, and evidence did not show any false or misleading statements). Importantly, whether a fiduciary has satisfied this duty is evaluated "under the circumstances then prevailing" and not with the benefit of hindsight. 29 U.S.C. § 1104; *see Grp. 1 Auto.*, 2020 WL 8299592, at *3. "A court should not find that a fiduciary acted imprudently . . . merely because, with the benefit of hindsight, a different decision might have turned out better."); *Osberg v. Foot Locker, Inc.*, 138 F. Supp. 3d 517, 552–53 (S.D.N.Y. 2015) (citing *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 412, 424 (4th Cir. 2007)); *see In re Wells Fargo ERISA 401(k) Litig.*, 331 F. Supp. 3d 868, 875 n.1 (D. Minn. 2018) (discussing *In re Target Corp. Sec. Litig.*, 275 F. Supp. 3d 1063, 1089 (D. Minn. 2017)) ("[A] fiduciary's decision should not be deemed dis-loyal just because it turns out to be a poor decision in hindsight."). Said differently, courts do not judge fiduciaries based on hindsight and do not impose on fiduciaries "a duty of clairvoyance." *Swinney v. GMC*, 46 F.3d 512, 520 (6th Cir. 1995).

The undisputed evidence established that statements that the RAP was designed to produce benefits comparable to, and in most cases better than, the old formula were

supported by thorough analysis, and repeated revisions of the RAP formula specifically aimed at achieving that result. Plaintiffs' expert admitted that "comparable" does not have to be "100 percent," and that there is a little "play" in what is "comparable." (Tr. 7/13 at 74:19–75:4.) Mr. Deutsch further testified what constitutes "comparable" is a "judgment call" with "no solid line," (Tr. 7/13 at 70:3–14, 71:25–72:6, 88:4–12), and there is no evidence that BP America judged the RAP to be anything other than comparable to the ARP at the time of the 1989 communications. Even using his definition of comparable, Mr. Deutsch testified BP "would not have known in 1989" that interest rates would drop and other factors would change such that benefits under the RAP would wind up not being comparable to benefits under the ARP. (Tr. 7/13 at 174:24–175:8.)

"An employer is not liable for breach of fiduciary duty under [ERISA] if the statements were made in good faith and the statements indicated the employer's actual intent at the time." *Swinney*, 46 F.3d at 520. "To be actionable, the statement must be an affirmative misrepresentation of current facts regarding future plan benefits . . . [S]tatements that accurately indicate the employer's intent at the time are not material misrepresentations leading to a breach of fiduciary duty under ERISA." *McCall v. Burlington N./Santa Fe Co.*, 61 F. Supp. 2d 563, 569 (N.D. Tex. 1999) (finding that the fiduciary's statement regarding future plans with better benefits was accurate when made and thus was not a misrepresentation); *see Barnes v. Lacy*, 927 F.2d 539, 544 (11th Cir. 1991) ("We fail to see how a fiduciary could be held liable for making a good faith, truthful statement solely because the statement might be subject to misunderstanding. The

35

district court, in so holding, placed an unreasonable burden upon [the Employer] to predict future, unintended events.").

Fundamentally, Plaintiffs say Defendants should be liable because, over the last 30 years, circumstances changed, and things did not ultimately work out as BP America had intended and projected in 1989. This is an impermissible hindsight attack inconsistent with basic ERISA fiduciary duty law and the facts of this case. Fiduciaries are not judged in hindsight. *In re BP P.L.C. Sec. Litig.*, 2017 WL 914995, at *6 (S.D. Tex. Mar. 8, 2017); *Rinehart v. Lehman Bros. Hold. Inc.*, 817 F.3d 56, 64 (2d Cir. 2016). BP America did not (and could not) know the world economy, and particularly interest rates, would change dramatically over time.

As set out in Defendants' brief in response to the Court's questions regarding cost (ECF 447), Paul McAuliffe, Karen Salinaro, and Ellen Collier—the witnesses involved in the 1989 plan amendment and communications who testified about what BP America did in designing the RAP, and what the RAP fiduciaries knew when they communicated the RAP to participants—each testified that the amendment was not a cost-cutting exercise, that BP America intended to design a competitive benefit comparable to (and, for most employees, better than) the old formula, and that the analysis done at the time suggested to the relevant decisionmakers that BP America believed it had achieved those goals. Mr. Deutsch testified that, in his experience, it was reasonable for BP America to rely on Kwasha Lipton to perform data analyses in the RAP design process, and that BP America's reliance on Kwasha Lipton for that work was "typical." (Tr. 7/13 at 178:25–179:10.) There is no basis in the record to conclude that any isolated statement in the

36

1989 communications (let alone the statements, viewed in totality) was knowingly or intentionally misleading.

In addition, the law is clear that a misrepresentation must be intentional to be an actionable breach of fiduciary duty. *See Varity*, 516 U.S. at 504 (emphasis added) ("To participate ***knowingly*** and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense is not to act 'solely in the interest of the participants and beneficiaries.'"); *Browdy v. Hartford Life & Accident Ins. Co.*, 630 F. App'x 278, 284 (5th Cir. 2015) (citing *Hobbs v. Baker Hughes Oilfield Operations, Inc.*, 294 F. App'x 156, 158 (5th Cir. 2008)) (mere negligence in communication is not enough to establish breach of duty of loyalty). There is no evidence in this case of any intentional misrepresentation.

### b. *Plaintiffs' attempts to claim omissions in the 1989 communications are based on obligations the law did not create.*

Plaintiffs' broadly allege in this case that the 1989 communications campaign announcing the RAP amendment left them with the belief that benefits under the RAP would be as good as or better than benefits under the ARP, or that they had no "risk" from the conversion. Plaintiffs, however, have offered no evidence of any such statement in any communication made in 1989.

None of the three class representatives were able to identify any of their claimed misrepresentations in the written communications. (*See* Tr. 6/21 AM at 19:20–20:8 (Ross letter does not say RAP benefits will be "as good or better" than ARP benefits); Tr. 6/21 PM at 35:8–18 (Long Brochure language does not say benefits would be "equal" to

ARP); Tr. 6/27 at 75:9–83:6, 85:18–87:25, 88:9–92:23 (identifying no untrue statements in Long Brochure)). Instead, Plaintiffs' testimony focused, at most, on the impressions they were allegedly left with from reading those communications, and each resorted to claiming there were certain things of which BP America failed to advise them. For example, Mr. Fujimoto testified that he was never provided a comparison between his RAP and ARP benefits. (Tr. 6/21 AM at 56:9–16.) He further testified that he did not know whether a fluctuation in interest rates "affected his ARP benefits." (Tr. 6/21 AM at 56:17–21.) Mr. Owen similarly testified that he was never provided a comparison of his RAP benefit to what he would have gotten under the ARP. (Tr. 6/21 AM at 82:3–6, 92:8–13.) Mr. Guenther testified that he believed the 1989 communications should have contained those comparisons for all of the then-participants in the plan. (Tr. 6/27 at 93:9–20.)

To the extent Plaintiffs are now attempting to claim that BP America somehow omitted from its 1989 communications the possibility that certain participants might receive less under the RAP than they would have under the ARP, those claims are readily defeated through reference to the documents. First, as is borne out by Plaintiffs' own testimony, the communications *do not* say that RAP benefits will be equal to or better than ARP benefits. Instead, in the Ross letter, there is a statement that the RAP "provides a retirement benefit to career employees that is comparable to the fully competitive benefit under the prior formula." (DX 6 at 1.) The Long Brochure says "[t]he Plan is designed to provide a retirement benefit that is comparable to—and, in most cases, better

than—the benefit you would have received under the prior pension formula." (DX 6 at 4.) Neither statement guarantees the benefits will be equal.

Second, with respect to both the statements regarding comparability, and the statement in the Ross letter that the amendment was not a cost-cutting exercise, the testimony from Ellen Collier, Paul McAuliffe, and Karen Salinaro (as summarized in ECF 447), demonstrates, at a minimum, those statements were consistent with BP America's knowledge in 1989, as supported by the analysis performed by Kwasha Lipton. Put simply, "[a]n omission without intent to deceive cannot be a material misrepresentation." *Callery v. Exxonmobil Corp.*, No. CV H-21-1086, 2021 WL 3711180, at *5 (S.D. Tex. Aug. 20, 2021) (quoting *Khan v. Am. Intern. Grp, Inc.*, 654 F. Supp. 2d 617, 629 (S.D. Tex. 2009)).

Third, there can be no liability for not providing individual, participant-level comparison of RAP and ARP benefits, for the straightforward reason that no such comparison is required. ERISA is a "comprehensive and reticulated statute," *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361 (1980), and the reporting and disclosure requirements are themselves "comprehensive." *See Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995). BP America satisfied those disclosure obligations at the time of the 1989 amendment, and Plaintiffs have never identified any requirement (even in their untimely 204(h) or SPD claims) that would have required BP America to provide the comparison calculations described by Mr. Guenther and Mr.

Owen in their testimony.[9] Indeed, with the benefit of more than forty years' experience as a pension consultant, Mr. Deutsch testified that he is aware of no requirement to provide such a comparison. (Tr. 7/13 152:24–153:6.) The Court should not create new disclosure obligations by finding any BP entity breached fiduciary duties by failing to provide comparisons of the new formula to the defunct one; "It would be strange indeed if ERISA's fiduciary standards could be used to imply a duty to disclose information that ERISA's detailed disclosure provisions do not require to be disclosed." *Haviland*, 730 F.3d at 571.

The 1989 communications disseminated to participants explained all material elements of the new plan formula. They described how opening accounts were calculated, what service credits were, how service credits would be calculated over time, how the interest crediting rate would be set, and how the interest crediting rate (and, where applicable, the supplemental crediting rate based thereon) would influence benefit accruals. What's more, while they did not provide individualized comparisons, the communications did disclose that the illustrative projections provided to individual employees were based on a number of assumptions, and that actual benefits would be determined based on the performance of variables over time. (*See* DX 39 at 2; DX 77 at 2; PX 460 at 2.) BP America also explained that for some, benefits under the RAP might be lower than benefits under the ARP. (*See* DX 6 at 20.) Plaintiffs cannot recover based

---

[9] While Plaintiffs do not remember what was presented at the rollout meetings, the slides from those meetings show that BP America did present sample calculations comparing ARP and RAP benefits for hypothetical employees, including comparisons that showed the possibility an employee could receive less under the RAP. (*See* DX 20.)

on an alleged omission where the communications provided to them specifically informed them of the very risk they claim was "omitted." *Vercellino v. Optum Insight, Inc.*, 26 F.4th 464, 469 (8th Cir. 2022) (no violation of fiduciary duty when information the beneficiary said ought to have been disclosed was in the plan documents, and evidence did not show any false or misleading statements).

> ### c. *This case is not Amara or Osberg.*

Plaintiffs want to frame this case as analogous to *Cigna Corp. v. Amara*, 563 U.S. 421 (2013), and *Osberg v. Foot Locker, Inc.*, 862 F.3d 198 (2d Cir. 2017), but those cases involved very different facts. In those cases, the courts found that the employers knowingly hid from employees that the cash balance conversions would result in long periods where employees earned *no additional pension benefit,* something known as "wear away."[10] The undisputed evidence in this case establishes that the RAP benefits grew each year based on pay credits and interest, with a built-in 5%/7.5% interest rate floor. Plaintiffs received statements showing them the year by year growth, and had access to an online dashboard and other tools that gave them transparency into the value of their retirement benefits.

The Court took evidence that Guenther's 1989 opening account balance was $6,423—consisting of the $3,342 he had accrued under the prior formula as of December 31, 1988 (through approximately 8.5 years of service), plus $3,081 calculated as the

---

[10] *See Amara v. Cigna Corp.*, 534 F. Supp. 2d 288, 303–04 (D. Conn. 2008), *aff'd,* 348 F. App'x 627 (2d Cir. 2009), *vacated and remanded*, 563 U.S. 421 (2011), *and cert. granted, cause remanded*, 563 U.S. 1004 (2011) (explaining wear away).

present value of the early retirement subsidy he could have gotten if he retired at age 55. (DX 39 at 1.) Beginning in approximately 1998, Mr. Guenther monitored his RAP account balance on a monthly basis, and understood it would receive interest credits at a minimum of 5% per year, and that the value of his benefit would never decline. (Tr. 6/27 at 23:1–23, 27:7–13.) Mr. Guenther testified that, in addition to monitoring his account balance, he requested and received several pension modeling statements, that those statements were a powerful and transparent tool, and that they allowed him to plan for retirement knowing exactly how much money he would have. (Tr. 6/27 at 31:2–22; DX 41.) Using those modeling statements, and in consultation with his financial advisor, Mr. Guenther elected to retire in 2018, and took a lump sum distribution of his pension, totaling approximately $770,000. (Tr. 6/27 at 32:4–33:2.)

Mr. Owen testified that he understood the prior pension formula to have been "back-end-loaded," and that employees who left BP before retirement age would get only a very small benefit under that formula. (Tr. 6/21 PM at 2-17:6–22.) In contrast, Mr. Owen testified that he understood the new formula allowed benefits to grow more smoothly over an employee's career, and—unlike the ARP formula—it allowed employees to see their account balance year in and year out. (Tr. 6/21 PM at 2-17:23–2-18:9, 2-26:7–2-27:2.) Mr. Owen testified that, during the rollout process, BP America disclosed that the RAP was "very different" than the prior formula, and that RAP benefits would be determined through annual pay credits and interest. (Tr. 6/21 PM at 2-21:20–2-22:4.) Mr. Owen agreed that the new plan was, in fact, very different than the prior formula, and that, in fact, benefits under the RAP were determined by the pay and interest

42

credits described in 1989. (Tr. 6/21 PM at 2-21:23–2-22:6.) Like Mr. Guenther, Mr. Owen testified that he received statements for his RAP account, which showed him how much his account was being credited with interest and service credits in each period, and that the value of his benefit under the RAP was easier to understand than the value had been under the prior formula. (Tr. 6/21 PM at 2-22:7–21.)

Mr. Owen testified that his RAP account never went down, and that the formula always provided for positive interest credits and positive service credits. (Tr. 6/21 PM at 2-28:2–8.) He testified that he knew, from the 1989 communications, that the interest rate would change on an annual basis, and that he understood his account would grow faster with a higher interest rate and slower with a lower one. (Tr. 6/21 PM at 2-30:2–16.) He acknowledged that the only people who received a promise, in 1989, that their retirement benefit would be the greater of their benefits under the ARP or RAP formulas were those people who were over age 50 as of January 1, 1989. (Tr. 6/21 PM at 2-30:22–2-31:9.)

Mr. Owen's account statements show he had an opening account balance of $32,955 as of January 1, 1989, and that his total RAP account increased to $43,349.66 by the end of 1989 (DX 259), to $56,105.38 by then end of 1990 (DX 260), and to $72,165.92 by the end of 1991 (DX 262). Consistent with his testimony that the account value always increased, Mr. Owen's statements show consistent annual growth (*see, e.g.*, DX 263–270), ultimately growing to a lump sum benefit in excess of $760,000. (Tr. 6/21 PM at 2-81:22–25.)

Mr. Fujimoto's account statements similarly document consistent growth from 1989 through his retirement. (*See* DX 78; DX 79; DX 86.) Mr. Fujimoto testified that he

received those statements, read them, and that they were clear to understand. (Tr. 6/21 AM at 37:3–10.) The RAP grew at all times, and worked precisely as it was described in 1989.

In contrast to the facts of this case, the communications in *Amara* were *knowingly false*. Although it knew otherwise, Cigna represented that: (1) the new plan would "significantly enhance" its "retirement program," would produce "an overall improvement in . . . retirement benefits," and would provide "the same benefit security" with "steadier benefit growth"; (2) employees would "see the growth in [their] total retirement benefits from CIGNA every year,"; (3) its initial deposit "represent[ed] the full value of the benefit [they] earned for service before 1998,"; and (4) that "[o]ne advantage the company will not get from the retirement program changes is cost savings." *Amara*, 563 U.S. at 428. As outlined above, the Plaintiff's cannot shoehorn their argument regarding a failure to disclose an "interest rate risk" into the type of knowingly false claims made in the Amara case.[11]

In *Osberg*, a Foot Locker witness admitted that, even though she and senior management knew that the cash balance conversion would result in an effective freeze of pension benefits for most participants, she made an "affirmative decision," consistent with senior management's wishes, not to include the "bad news" of the "wear-away" in

---

[11] *Amara* also was *not* a fiduciary breach claim, but instead one timely asserting claims for violations of ERISA's statutory disclosure requirements. *See Amara v. CIGNA Corp.*, 775 F.3d 510, 516 (2d Cir. 2014) (in discussion of appropriate remedy, describing underlying liability finding as violation §§ 102(a) and 204(h) of ERISA, 29 U.S.C. §§ 1022(a) and 1054(h)).

an introductory letter sent to plan participants. *Osberg*, 862 F.3d at 203-04. Again, there is no evidence of a "wear-away" in this case. Similarly, the evidence of BP America's intent and what it knew is the polar opposite of the deception found in *Osberg*.

## V.       Plaintiffs' Continued Reliance On Alleged Oral Statements and Isolated Communications Prevents Class-wide Recovery.

Plaintiff Guenther testified about alleged statements made to him about a local HR representative, Larry Motz, about his opening account balance, (Tr. 6/26/2023 at 55:12–56:10.) Plaintiffs have also introduced deposition testimony from Art Balfe, Jerry Grdina, and Barry Cohn—three potential class members—who claim to have had conversations with an executive named Donald Duckworth in which he supposedly promised them that RAP benefits would be as good as or better than ARP benefits, and suggested that BP America would amend the plan again if that turned out not to be true. The conversations these four individuals describe cannot be the basis for any misrepresentation claim; a contrary finding would require decertification of the class.

According to *Plaintiffs*, this case, and the relief sought, is based on the idea that BP Corporation North America made uniform, written communications to all RAP participants. (ECF 191 at 18, 25.) From that representation, the Court certified the class and the subclass based on the fact that the case "focuses on written uniformly disseminated communications, not oral communications." (ECF 267 at 17.) Plaintiffs seek a uniform plan-wide remedy: equitable reformation.

Duckworth's alleged statements at a pre-roll out meeting involving a few individuals are not part of the claim asserted, and are not relevant to the issues to be tried

in this case. None of the named class representatives nor the one class member who testified in Court heard or were aware of them. Likewise, there is no evidence that they were not uniformly distributed to class members. Indeed, the evidence is just the opposite. Further, Plaintiffs have adduced no evidence that Duckworth was a fiduciary at the time he made these alleged statements. Similarly, there is no evidence that Duckworth had any role in the "communications campaign" including the train the trainers sessions that provided training to the actual BP America personnel who actually held the meetings. To the extent Duckworth's alleged statements can be construed as promising anything about future RAP benefits, he had no authority to override the governing Plan document. If Duckworth went "off-script," and made promises contrary to the written Plan terms, neither BP America nor BP Corporation North America can be held liable. *See Ladouceur v. Credit Lyonnais*, 584 F.3d 510, 512–13 (2d Cir. 2009) (citations omitted) (oral statements cannot directly amend terms of a pension plan, and cannot be given that effect by allowing them to be re-framed as fiduciary breach claims; "[g]iving such effect to an oral statement 'would undermine ERISA's framework which ensures that [ERISA] plans be governed by written documents,' as well as dilute the protection conferred by the writing requirement, which prevents 'employees from having their benefits eroded by oral modifications to the plan'").

Evidence of non-uniform oral statements also is not relevant to any remaining issue in this case. "Several courts have concluded that ERISA fiduciary claims based on oral representations are not suitable for class certification precisely because they require . . . individualized proof, and thus fail the commonality and typicality

requirements." *Tootle v. ARINC, Inc.*, 222 F.R.D. 88, 96 (D. Md. 2004) (citing *Gesell v. Commonwealth Edison Co.*, 216 F.R.D. 616, 623–25 (C.D. Ill. 2003)); *see also Fitzwater v. CONSOL Energy, Inc.*, No. 1:17-CV-03861, 2019 WL 5191245, at *13 (S.D.W. Va. Oct. 15, 2019); *Lemberg v. Scottsdale Healthcare Corp. Health Plan*, No. CV-11-00271-PHX-ROS, 2013 WL 12097449, at *4 (D. Ariz. Feb. 4, 2013); *Spencer v. Cent. States, Se. & Sw. Areas Pension Fund*, 778 F. Supp. 985, 990-91 (N.D. Ill. 1991).[12] Plaintiffs have never offered a way to address and resolve, on a classwide basis, issues related to alleged oral misrepresentations and individual "perception" of the alleged misrepresentations.

In *Tootle*, the court denied class certification because it would "need to evaluate any oral representations made to class members attending these meetings—which could vary significantly among the class members—to determine if these representations are sufficient to overcome" the misleading effect of "any alleged omissions in the written materials on which Tootle relies." 222 F.R.D. at 96.

If the Court is inclined to consider Motz's statements to Guenther, or to attribute any significance to statements allegedly made by Duckworth, the class in this case must be de-certified. A class that requires the Court to "wade through" individual

---

[12] *See also Martin v. Shell Oil Co.*, 198 F.R.D. 580, 592–93 (D. Conn. 2000) (denying class certification because issues supported by common evidence were not enough "to overcome the extensive individualized proof of . . . breach [and] causation . . . likely to be required"); *Mick v. Ravenswood Aluminum Corp.*, 178 F.R.D. 90, 92–94 (S.D.W. Va. 1998); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 398 (6th Cir. 1998) (finding commonality lacking because "there must have been variations in the early retirees' subjective understandings of the representations and in their reliance on them").

circumstances to assess membership is not adequately defined or ascertainable. *See Robinson v. Gen. Motors Co.*, No. 4:15-CV-158-Y, 2015 WL 13731154, at *3 (N.D. Tex. Oct. 21, 2015) (declining to certify class of employees "who may seek unpaid leave for a holy day because of a religious belief" because determining class membership would require court to consider "each individual's circumstance," including whether leave was requested, whether it was unpaid, and whether it was based on religion).[13]

## VI.   Fujimoto's Release Bars His Claim, And Those Of The Sub-Class He Represents.

Plaintiff Fujimoto signed a valid and enforceable settlement agreement with BP Corporation North America, including all subsidiaries and affiliates. (DX 1060.) He released his right to bring this claim. The Court should dismiss his claim and that of the sub-class he represents.

"[A] general release of 'any and all' claims applies to all possible causes of action, unless a statute specifically and expressly requires a release to mention the statute for the release to bar a cause of action under the statute. ERISA contains no such requirements." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 373 (5th Cir. 2002); *Peters v. Reliance Standard Life Ins. Co.*, 238 F.Supp.3d 905, 911 (S.D. Tex. 2017).

---

[13] S*ee also In re Principal U.S. Prop. Account ERISA Litig*., No. 4:10-CV-00198-JEG, 2013 WL 7218827, at *34 (S.D. Iowa Sept. 30, 2013) (on ascertainability: "[d]ue to the lengthy, individualized inquiry necessary to determine which investors satisfy the class definition"); *Alasin v. Westinghouse Savannah River Co.*, No. CIV.A.1:05-1045HFF-B, 2008 WL 2169427, at *6 (D.S.C. May 23, 2008) (declining to certify class where "it will be necessary to examine and determine numerous personal variables for each employee," including "individualized inquiries about each employee's employment history").

The Fifth Circuit "employ[s] a two-step burden-shifting framework to assess a waiver's validity and enforceability." *Clayton v. ConocoPhillips Co.*, 722 F.3d 279, 292 (5th Cir. 2013) (citing *O'Hare v. Global Natural Resources, Inc.*, 898 F.2d 1015 (5th Cir. 1990) (superseded on other grounds by statute)) First, a party must "establish[] that his opponent (1) signed a release that addresses the claims at issue, (2) received adequate consideration, and (3) breached the release . . . ." *Id.* (quoting *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935 (5th Cir. 1994) (numbering added for clarity).

Here, Plaintiff Fujimoto testified that, after his employment ended, and after he had received his RAP benefit, he signed a settlement agreement with BP in exchange for $75,000 to which he was not otherwise entitled. (Tr. 6/21/23 at 45:10–13; 46:23–47:7.) His release precluded all claims, including ERISA claims, with a narrow exception for claims "under Section 502(a)(1) or 503 of ERISA . . . ." The only claim here is an ERISA Section 502(a)(3) claim, which is not within the narrow exception. (ECF 82 at ¶¶ 96-114.) Despite the terms of that release, Plaintiff Fujimoto initiated this action.

Based on BP's satisfaction of its burden as to the release, the burden shifts to Plaintiffs to "demonstrate[e] that the release was invalid because of fraud, duress, material mistake, or some other defense." *Clayton*, 722 F.3d at 292. Courts evaluate any such defense on the totality of the circumstances. *Id.*

As he testified at trial, Fujimoto was represented by counsel when he knowingly and voluntarily signed his release. (Tr. 6/21/23 at 46:11–13.)  By the terms of his settlement agreement, he had forty-five days to consider the agreement prior to signing. And, the agreement is clear and concise, including many labels, short paragraphs, and

common prose. There is no fraud, duress, or mistake. The release is valid and enforceable.

Fujimoto attempts to carry his burden using an inappropriate (and inadmissible) reference to extrinsic evidence, which he claims modifies his release. (Tr. 6/20/23 at 134:9–136:14.) Even if considered, however, that email does not modify the terms of the release in the settlement agreement. Plaintiffs have pointed to a single sentence in an email from a BP attorney to Fujimoto's attorney, that states "the offered payment is not related to any claims that the Fujimotos may feel they have related to their pension benefits." (PX 69.) Nothing about that sentence—or the rest of the correspondence in the exhibit—modifies the terms of the agreement itself. The $75,000 payment did not need to relate to the claim at issue here for the release to cover that claim. "[A] general release of 'any and all' claims applies to all possible causes of action, unless a statute specifically and expressly requires a release to mention the statute for the release to bar a cause of action under the statute. ERISA contains no such requirements." *See Chaplin*, 307 F.3d at 373.

Plaintiffs' sole remaining argument that Fujimoto's release does not bar the claim asserted here rests on ERISA's anti-alienation rule, and fails to save the claim. ERISA's anti-alienation rule mandates that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1) (emphasis added). Plaintiffs' claim here does not seek payment of a benefit provided by the RAP; it seeks to reform the RAP to provide for a different benefit. Plaintiffs' expert confirmed there is no claim for additional benefits under the RAP formula in the case.

(Tr. 7/13 at 38:9–11.) Settlement of that claim does not involve alienation of a vested pension benefit, and does not fall within the text of the anti-alienation rule.

Regardless, the Supreme Court has rejected the argument Plaintiffs advance. ERISA's anti-alienation provision does not operate to invalidate waivers of claims, even as to claims for benefits. *See Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 297–99 (2009) (rejecting Fifth Circuit's holding that anti-alienation rule invalidated ex-spouse's waiver of any benefit entitlement in divorce decree; affirming on other grounds). "In *Kennedy*, the Supreme Court held that ERISA's anti-alienation provision does not apply to the waiver or release of rights to vested benefits under an ERISA-governed plan." *Bacon v. Stiefel Lab'ys, Inc.*, No. 09-21871-CV-KLNG, 2011 WL 4944122, at *7 (S.D. Fla. Oct. 17, 2011). Even the case Plaintiffs rely on to support their argument—which pre-dates *Kennedy*—enforced the waiver at issue. *See Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999).

## **CONCLUSION**

Defendants respectfully request that the Court grant this motion, enter judgment in favor of Defendants, and award any other relief it deems appropriate.

Dated: July 14, 2023                    Respectfully submitted,

                                        By:    /s/ Ian H. Morrison
                                            Ian H. Morrison, Attorney in Charge:
                                            Illinois State Bar No. 6231153
                                            S.D. Texas Bar No. 1619213
                                            imorrison@seyfarth.com

                                            Monica Fitzgerald, Of Counsel
                                            Texas State Bar No. 07088320
                                            mafitzgerald@vorys.com

                                            Steven R. Rech, Of Counsel
                                            Texas State Bar No. 16649200
                                            srech@vorys.com

                                            Emma Mata, Of Counsel
                                            Texas State Bar No. 24029470
                                            emata@seyfarth.com

                                            Thomas Horan, Of Counsel
                                            Illinois State Bar No. 6324075
                                            thoran@seyfarth.com

SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606
Telephone:    (312) 460-5000
Facsimile:    (312) 460-7000

700 Milam Street, Suite 1400
Houston, Texas 77002-2812
Telephone:    (713) 225-2300
Facsimile:    (713) 225-2340

VORYS, SATER, SEYMOUR & PEASE
909 Fannin, Suite 2700
Houston, TX 77010

*Attorneys for Defendants BP Retirement*
*Accumulation Plan and BP Corporation*
*North America Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served this document on all counsel of record via ECF filing on July 14, 2023, to:

Philip Randolph Meade
Peter Steilberg
Merrick Hofstedt and Lindsey PS
3101 Western Ave
Ste 200
Seattle, WA 98121
Email: pmeade@mhlseattle.com
psteilberg@mhlseattle.com

Susan Patricia Weeks
James Vernon and Weeks PA
1626 Lincoln Way
Coeur d'Alene, ID 83814
Email: sweeks@jvwlaw.net


  */s/  Ian H. Morrison*
Ian Morrison

53